124 663
e125 470

## SAVANNAH ELECTRIC COMPANY *v.* BELL.

1. An action by a mother, under the Civil Code, § 3828, for the homicide of a child who contributed to her support and upon whom it was claimed that she was dependent, will not be defeated by proof that a tract of land, title to which is in another child, is charged with the support of the mother, when, under the evidence, the jury were authorized to find that neither the income which might be derived from the use of the land, nor the sum which would probably be derived from an investment of the proceeds of a sale of the land, would place the parent in a condition of independency.

2. In a suit under the code section cited above, it is not necessary, in order for the plaintiff to recover, that she show by the evidence that she depended alone upon the deceased child for her entire support. It is sufficient if she establishes partial dependence upon the child's labor, accompanied by contributions therefrom to her maintenance.

3. When the charge of the judge is taken in its entirety, it presents a full and fair exposition of the law of the case. The extracts therefrom upon which error was assigned were not erroneous for any reason assigned, and the requests for instructions which were refused, so far as legal and pertinent, were covered by the language of the charge.

4. The evidence authorized the verdict, and the amount assessed as damages can not as matter of law be said to be excessive.

Argued November 16, 1905.—Decided January 12, 1906.

Action for damages. Before Judge Cann. Chatham superior court. August 8, 1905.

Mrs. Mary Bell brought suit against the Savannah Electric Company, and alleged, that a pole belonging to the company, and maintained by it, on the corner of St. Julian and Bull streets in the city of Savannah, had been allowed to decay and become in a defective condition; that while the plaintiff's daughter, Mamie Bell, was passing by the pole, it fell to the ground, striking and killing her; and that she contributed to the plaintiff's support, and the plaintiff was dependent upon her. The jury returned a verdict for the plaintiff, of $6,141.96. The defendant moved for a new trial, upon the general grounds, and upon various special grounds containing exceptions to certain portions of the charge of the court, and exceptions to refusals to charge. The motion was overruled, and the defendant excepted.

*Osborne & Lawrence,* for plaintiff in error.

*Travis & Edwards* and *Adams & Adams,* contra.

COBB, P. J. (After stating the foregoing facts.) The following request in writing to charge was refused by the court, and is one of

the grounds in the motion for a new trial: "If you should find from the evidence that the plaintiff conveyed a tract of land to her daughter, Nancy M. Futch, the consideration of same being the support of the plaintiff for and during the term of her natural life, and that Nancy M. Futch accepted the same, and you should find that in consideration of the conveyance to her by James I. Bell of a tract of land in Bulloch county, Georgia, the said Nancy Futch further agreed to support plaintiff for and during the term of her natural life, and that said tract of land was charged in said conveyance with the support of the said plaintiff, and that said Nancy Futch has never broken her contract, and that the said tract of land has never been subjected by the plaintiff to her support, and that said Nancy Futch has never given plaintiff cause to subject the same, but that same remains intact and still charged with the support of the plaintiff, and that it was so charged with the support of the plaintiff on June 25, 1904, then you should find in favor of the defendant." We do not think this would have been a proper charge to give to the jury. The statute gives the mother a right of recovery for the death of a child upon whom she was in part dependent, and who contributed to her support. There may have been another source of revenue from which the mother derived a benefit, but this would not necessarily defeat her right of action. *Daniels* v. *Ry. Co., 86 Ga.* 236. There may have been some person, other than the deceased, who was charged with the legal duty of supporting the mother, and against whom, in case of failure to render such support, an action would lie. But it was not the purpose of the statute to require, as a condition precedent to a mother's recovery for the homicide of a child, that she should exhaust every legal right she possessed against every person or all property charged with her support. The right of action consists in the contribution by the child and the fact that, under the circumstances as they existed at the time of the homicide, the mother was dependent upon such child in whole or in part for her support. *Central R. Co.* v. *Henson,* 121 *Ga.* 462; *R. & D. R. Co.* v. *Johnson,* 89 *Ga.* 561; *Smith* v. *Hatcher,* 102 *Ga.* 160.

We do not, of course, mean to hold that a parent possessed of property from which an ample support could be derived, but who, for reasons satisfactory to him, does not see fit to use this source of income as a means of support, and uses it for other purposes and

permits a child to contribute to his support, would be dependent, in the meaning of the statute. But when a parent is in a position where he has the legal right to call upon another person for support, and when in response to this call only a partial support would be the result, the parent would be dependent upon the contribution of the child, which would be necessary in any event to complete the amount required for the maintenance of the parent; and the fact that the parent does not call upon the other source of income would not, under such circumstances, bar a recovery. The present case is one where the rule which we now promulgate is peculiarly applicable. The jury were authorized to find under the evidence that the land chargeable with the support of the plaintiff was not producing a sufficient amount for that purpose, and they were also authorized to find that if this land had been sold at the highest proved value, this amount invested would not produce an income sufficient for the support of the parent. While the income in the one instance derived from the operation of the farm, or the income in the other instance derived from the investment of the purchase-price, would have materially aided in the support of the plaintiff, it would not have rendered her independent of the contributions of the child, which were necessary in order to bring about a state of independency. It is not necessary, under the statute, that the child contributing to the support of the parent should be under any legal obligation to make the contribution. It is the fact of contribution, and not the legal obligation to make it, that the statute makes the ingredient of the cause of action. Daly *v.* New Jersey Co., 155 Mass. 5.

2. Error is assigned upon an extract from the charge which instructed the jury that plaintiff would be entitled to recover if she were partially dependent for her support upon the deceased. A request upon the subject of dependency was refused in the language in which it was written, the word "partial" being interpolated before the word "dependent." Error is also assigned upon this. Under the ruling in *Central R. Co.* v. *Henson,* 121 *Ga.* 462, there was no error in the charge as given, nor in the refusal of the request in the language in which it was submitted.

3. Error was assigned upon the following extract from the charge: "The care of a prudent man varies according to circumstances, dependent upon the degree of danger. What is the pre-

cise legal intent of the term 'ordinary care' must, in the nature of things, depend upon the circumstances of each individual case. It is a relative, and not absolute term. The degree of care and fore-sight which is necessary to use in any given case must always be in proportion to the nature and magnitude of the injuries which will be likely to result from the occurrence which is to be anticipated and guarded against." The objection to this charge was that under it the degree of care in a given case was declared to be in proportion to the nature and magnitude of the injury likely to result; it being contended that the true rule is that the degree of care is to be pro-portioned to the probability or improbability of the happening of the injury. This charge seems to have been compiled from the language used in the case of *Central R. Co.* v. *Ryles,* 84 *Ga.* 430, and the part which is objected to is in the language of Chancellor Walworth, in the case of Mayor *v.* Bailey, 2 Denio, 433, which was approvingly quoted by this court. Even if the criticism made by the counsel of this language is well founded, we do not think that any error which might have been committed in the use of the lan-guage would be a sufficient reason for granting a new trial, when this extract from the charge is taken in connection with the entire charge on the subject. There were assignments of error upon other portions of the charge in reference to the duty resting upon the defendant and the degree of care that it was required to exercise, it being contended that the effect of the instructions complained of was to impose upon the defendant the exercise of extraordinary care. Of course the defendant was not bound to this high degree of diligence. All that it was required to do in the erection and maintenance of its poles for the protection of travellers upon the street was that degree of care which would be ordinary care under the circumstances. When the charge of the judge is read as a whole, it is apparent that the instructions required only this degree of care to be exercised. The charge was full and fair; and even if there were inaccuracies of expression therein, they were not of such a character as to mislead the jury on this controlling and im-portant branch of the case. We find no error in any of the charges complained of. The requests to charge, so far as legal and perti-nent, were covered by the charge.

4. It only remains to be determined whether there was evidence sufficient to authorize a finding against the defendant on the ques-

tion of liability, and whether the damages assessed were excessive. The evidence on the question of liability was conflicting, and was of such a character as that a verdict for either party would have been authorized. It may be that the preponderance of the evidence was against the verdict; but viewing the evidence in its most favorable light for the plaintiff (which we are required to do at this stage of the case), we are not prepared to say that the verdict is entirely unsupported. According to the testimony of some witnesses the pole was in an extremely rotten condition, and had been in use for about fifteen years previous to the injury. If the pole was in the condition described by some of the witnesses who saw it after it fell, we think a jury would be authorized to find that its condition should have been discovered by the exercise of ordinary care, that is, the care which the law requires the defendant to exercise under all of the facts and circumstances of the case. The verdict was for $6,141.96. It is contended that this is excessive. The deceased was thirty-four years of age at the time of her death. She had an expectancy, according to the mortality tables, of nearly thirty-two years. She was earning from $30 to $35 per month at her regular work, and from $2.50 to $4 per week from work done during the hours she was not engaged in the labor of her regular occupation. Using these figures, and calculating according to the annuity table, the value of her life would be about $6,300. Her capacity to earn money would increase during the first years of her expectancy, and would diminish during the latter years of that period. Her employer testified that as she grew more proficient, her earning capacity would increase. The jury had a right to take this fact into consideration; and as they seem to have done so, we do not feel authorized to hold as matter of law that the verdict is excessive, simply because it is so near the amount which, according to the tables, she would be entitled to if her earnings continued the same during her expectancy, and her capacity to earn remained stationary. It may be that the jury acted upon the probability that the diminution in her capacity to earn during the latter period of her expectancy would be more than offset by her increase of capacity during the years of strength and activity. The verdict was full, but as the jury in estimating the value of her life were authorized to take into consideration the matters above referred to, we do not feel justified in holding that as matter of law the finding is excessive.

Complaint is made of the charge instructing the jury that "the present worth of a given sum is arrived at by dividing the given sum by $1, plus the legal rate of interest, seven per cent. for the given time." This was recognized in Kinney *v.* Forkerts (Mich.), 48 N. W. 283, as a correct rule for estimating the present value of a sum payable in the future. But even if this were not a correct rule, the defendant is not in a position to complain of the instruction; for if this rule had been applied, the finding for the plaintiff would have necessarily been a smaller sum. The plaintiff might well have complained of the instruction if the instruction did not contain the correct rule, but it furnished no ground of exception to the defendant. It was said, in the argument, that this case puts the statute contained in the Civil Code, § 3838, to its severest test, inasmuch as the expectancy of the plaintiff was only nine years, and consequently the actual value of the life of the deceased to her was only a portion of the amount received. If the statute were one which was purely compensatory in its nature, this criticism would be well founded. The statute is, however, one that is intended to inflict a punishment upon wrong-doers who bring about the death of a human being by negligence. Lord Campbell's act and the various statutes in this country based upon it are nothing more than a method of punishing negligence by civil action. The multiplication of fatal accidents and the practical impossibility for securing the punishment of mere carelessness by means of criminal proceedings were the causes which brought about the passage of Lord Campbell's act as well as those which have followed it. 1 Shearman & Redfield on Negligence (5th ed.), §125. The General Assembly could have inflicted this punishment either by indictment or by qui tam action where the recovery would go to the public; but for reasons satisfactory to the lawmaking power the punishment is inflicted through the means of a civil action, and the penalty resulting is bestowed by the public upon those who have suffered directly by the act of the wrong-doer. The General Assembly has a right to impose upon a wrong-doer any penalty suitable as a punishment for the wrong he has committed, unless such punishment is prohibited by some constitutional provision. It is within the province of the General Assembly to impose double damages, treble damages, and the like, upon one who by his wrongful conduct has damaged another. The different laws above referred to authorize certain

persons to recover damages from one who wrongfully takes the life of another related to them in some way, the amount of damages being a specific sum, as is the case in some of the States, or a sum to be ascertained by a certain rule, as is the case of the statute in this State. This is nothing more or less than a legislative imposition of a penalty upon the person who causes the death of another by negligence, the penalty to go to the person injured. While such legislation is punitive so far as the defendant is concerned, it is compensatory so far as the plaintiff is concerned; but exact compensation for the loss sustained is not the primary object of the statute, though in many cases this result may be brought about. That the legislature may in such cases impose double damages seems to be unquestioned. Littlewood v. N. Y. Ry. Co., 89 N. Y. 24, 27. The damages recovered by the plaintiff in this case are intended incidentally to compensate her for the loss she has sustained, but primarily to punish the defendant for its negligence in bringing about the death of a human being. · It may be that in this case exact compensation to the plaintiff would not have been an adequate punishment upon the defendant for the wrong it committed.

<em>Judgment affirmed. All the Justices concur.</em>