## 1119.  CORDRAY *v.* SAVANNAH ELECTRIC COMPANY.

The petition set forth a cause of action, and it should not have been dismissed upon demurrer.

Action for damages, from city court of Savannah—Judge Freeman.  March 9, 1908.

Submitted June 10, 1908.—Decided February 16, 1909.

The following are the material portions of the petition: "2d. That the Savannah Electric Company owns, operates, maintains, and controls a system of street electric railway, running in and through the streets of the city of Savannah, and, in particular, on Whitaker street from Fortieth street northward to Bay street.

A line of said defendant's track also runs eastwardly and westwardly along the center of Broughton street, and the two lines of track intersect at Whitaker and Broughton streets, at the intersection of which said streets a curve track leads from the Whitaker-street track onto the Broughton-street track, from the south side of Broughton street, and thus permits a car to turn from the Whitaker-street track westward to the Broughton-street track, and from the Broughton-street track southward to the Whitaker-street track. 3d. That on the night of November 16, 1907, your petitioner was standing on Whitaker street, a few feet south of the southern line of Broughton street, and about four feet east of the eastern rail of the Whitaker-street track. While so standing, your petitioner's back was toward the Whitaker-street track, and your petitioner, in company with a crowd of other persons, was watching an itinerant vender exhibit his wares for sale. 4th. That at said time and place an Isle of Hope car of the defendant company, which is a long car, came up Whitaker street, going north, and stopped just before reaching Broughton street, and right by petitioner, for the purpose of permitting passengers to board and alight therefrom. Your petitioner did not know that it was the custom of the cars running northward on Whitaker street to take the curve and go westward on Broughton street, and supposed, when said car stopped, that when it started again it would proceed directly northward across Broughton street. 5th. Your petitioner shows that while he was standing at the place indicated, the said car moved rapidly on, without ringing any bell before starting, and took the curve westward into Broughton street; and, while doing so, the rear end of said car swung out and around toward petitioner, and struck petitioner violently in the middle of the back, and threw him ten or twelve feet to the curbing, knocking petitioner unconscious. 6th. Your petitioner shows that by reason of said striking, he sustained injuries to the muscles, ligaments, and tendons of his back, knees, wrists, and sides, and was laid up for a period of eight days, during which time he was unable to perform his usual and accustomed work. Your petitioner suffered mental and physical pain, and at the present time continues to suffer. 7th. Your petitioner shows, that he had a right to be on the street at the point where he was standing, that he did not know said car would turn into Brough-

ton street, and did not, therefore, know that he and others of the crowd were incurring any risk in standing near the Whitaker-street car track, that he was in the exercise of due care, and in no way contributed or consented to his injuries, but charges that they were due entirely to the negligence of the defendant company, its servants, agents, and employees, as follows: (*a*) In not ringing a bell to indicate that it was about to start, and thus giving pedestrians an opportunity to get out of the way, and that said defendant company knew, or by the exercise of proper diligence could have known, that the rear end of said long car, in rounding a curve, swings far out and around, and is likely to strike a person standing four or five feet from the track, unless such persons are warned of its movement around the curve. (*b*) In rounding said curve at so rapid a rate as to knock petitioner a distance of ten or twelve feet, when, if they had slowly moved around said curve, and had struck petitioner, his injuries would have been slight, or none at all, and that, in so rounding said curve at a rapid rate of speed, said defendant company was guilty of negligence, amounting to a disregard of the rights of pedestrians who were near said car, the presence of which pedestrians said motorman and conductor, or either of them, knew, or in the exercise of ordinary care could have known, and to whom they owed the duty of protection against the movements of said car when pedestrians are not charged with notice of intention to round the curve. (*c*) In not warning pedestrians who were within a few feet of said track of the intention to round said curve, or to warn them while in the act of rounding said curve, as, in the exercise of proper care, they should have done, as the crew of the car knew that said rear end would spring far out and around, and would, in all probability, strike a person standing near the track; and said car crew should have warned and notified pedestrians to get out of the way of the spring of said car, and, in failing to do so, was guilty of negligence; that said car crew knew of the presence of said petitioner and other persons on said street at said time and place, or, in the exercise of proper care, could and should have known of their presence. 8th. Your petitioner sues for the injuries received, for the pain and suffering he endured and still endures, for his lost time from work, amounting to sixteen dollars, or other large

sum, and by reason of all of which petitioner claims damages in the sum of $1,000."

The defendant demurred specially, upon the following grounds: "(1)   The language 'without ringing the bell before starting,' in the fifth paragraph, is irrelevant and states no fact which could be the proximate cause of the injury.   (2)   Subsection (*a*) of paragraph 7 presents no ground of negligence which could be the proximate cause of the injury."   Subject to this special demurrer the defendant demurred generally to the petition, as setting forth no cause of action.   The trial judge sustained the demurrers and dismissed the petition; and the plaintiff excepts to this judgment.

*Oliver & Oliver,* for plaintiff, cited:   Civil Code, §§2321-22, 3830; *Ga. R.* 65/120 (2); 66/707; 78/700; 79/51; 90/661 (4); 102/489; 103/655; 105/380; 113/708; 127/473 (1); 129/106.

*Osborne & Lawrence, Edmund H. Abrahams,* for defendant, cited:   101 *Ga.* 411; 103 *Ga.* 656 (3); 158 Mass. 49 (32 N. E. 899).

RUSSELL, J.   (After stating the facts.)

It is not necessary to review the judgment of the lower court upon the special demurrer.   While it is true that when a special demurrer calls for information to which the defendant is entitled, and the court has considered the special demurrer first and has directed an amendment, and the information is not furnished by the necessary amendment, the presumption may be indulged that if the amendment were made according to the true facts, it would be shown that the plaintiff had no cause of action.   In the present case, however, the judge passed upon the special and the general demurrers together; and, so far as appears, no amendment to meet the objections of the special demurrer was ordered.   And it is unnecessary for us to consider the special demurrer for the further reason that it is only when a petition is so defective that, by reason of its failure to set forth a cause of action, it could not withstand a general demurrer, that failure to supply the information which is called for by the special demurrer can properly be said to raise a presumption that a fuller averment of all the facts in relation to the transaction would show that the plaintiff, even if permitted to amend, would still have no cause of action, and that, therefore, the petition should be dismissed upon the

general demurrer. We think the petition set forth a good cause of action, without amendment.

According to the allegations of the petition, the plaintiff was standing with quite a crowd of other persons in a thoroughfare, listening to the "spiel" of a street vender. No reason appears why he did not have the right to be there. He was standing outside the curve of a track which went around the corner of a street that crossed the street in which he was standing,— Whitaker street,—and also at the side of a track which did not go around the corner, but proceeded in a straight line along Whitaker street. A street-car of the defendant company, moving along Whitaker street, comes to the corner or intersection of the two streets, and stops to discharge passengers, or for some other necessary purpose. The servants of the street-railway company having the car in charge can see that there is a large crowd in the street and near the railway tracks. These employees know that the car, instead of going straightforward (as the plaintiff and others might suppose it is going to do), is going to turn around the curve. They know that the car is a long car, and they are charged with knowledge of the fact, if it is a fact (and the demurrer admits that it is), that the rear of such long cars, when propelled rapidly around a corner, swings outward from the curve for some distance. These employees see that the crowd is engrossed with the acts and sayings of the street vender. Can a railway company, under such circumstances, assert by demurrer the absolute right to so use a thoroughfare dedicated to the use of the public as to proceed rapidly around the curve without giving bystanders any warning as to which track the car will take, and claim, if any one should be knocked down and injured by the swing of the rear end of the car, that there was no duty to give him warning, and that it was his duty to know that the car would go around the corner, instead of pursuing a straightforward course along the street it had been traveling previous to this stoppage? We think not; and for this reason we are satisfied that the learned trial judge erred in sustaining the demurrer and dismissing the petition. Upon our first consideration of the record we were inclined to think that the trial judge was right, but maturer reflection has convinced us that the tendency to forget that all questions of negligence are exclusively for the

jury influenced us (as it did the judge of the lower court) to assume to decide what it is the exclusive province of the jury to determine, to wit, whether certain acts, under a particular state of circumstances, are or are not negligence on the part of a defendant as related to the plaintiff, in the particular situation in which the plaintiff found himself.

At first blush it may seem that one who knows that he is standing in a public street traversed by a street-railway using the necessary, but at the same time dangerous, instrumentality of heavy and rapidly moving cars, which has the right to use the street, and who allows himself to become engrossed in some subject other than his own safety, is so negligent that his contributory negligence is great enough to defeat a recovery in case he should be injured in the manner stated, even by negligence on the part of the street-railway company. Again, it must be borne in mind that, in a certain sense, a street-railway company has, and must necessarily have, larger rights upon that portion of the street occupied by its track, and upon such lateral extension of this space on each side of its track as is necessary for the passage of its cars, than a pedestrian; for the reason that the law must look to the greatest good of the greatest number, and that if the rule were otherwise, one pedestrian occupying the track could compel the stoppage of a street-car and thereby inconvenience and delay the journey of perhaps a hundred passengers in the street-car, each one of whom, as a citizen, is as much entitled to the use of the street as the particular pedestrian whose occupancy of the track has prevented the passage of the car. But while this is true, it is the duty of street-railway companies and their employees to use all due diligence to avoid injury to any citizen who is in the street. See *Macon Ry. & Light Co.* v. *Barnes,* 121 *Ga.* 445 (49 S. E. 282), and cit. And as to a person who is on the street, and is not standing either on the track or any other portion of it necessary for the ordinary running of the cars, the rate of speed must be such as would not injure one occupying the position just stated. One who is standing in a street, out of the ordinary passageway of a street-car, has the right to presume that the car will not be run at such a rate of speed or so negligently in any other respect as to leave the tracks and, running beyond the space usually necessary for its locomotion, inflict injury upon

him. Likewise, one who is standing so far from the curve of a street-car track that in the proper and ordinary running of the cars he would not be affected by the swing of the car has the right to presume that he is safe, if he is at a position in the street beyond the point where the end of the car would reach when run at a proper rate of speed and in an ordinary, prudent manner. So the whole question, as to whether a street-railway company, in injuring one who is in the street by knocking him down, is guilty of negligence because the car was propelled too rapidly around the curve (if it was run too rapidly), is one for the jury, and may by a jury be determined by ascertaining whether he was at a point in the street (even though the point was near the track) where he would have been safe if the car had been properly managed and not run at an unusual rate of speed.

In what has been said so far, we have dealt with the case upon the supposition that the pedestrian who is in the street knows or has reason to know that the schedule of the car is such that it will necessarily turn the curve, even though there be two tracks, one going around the corner and one going straightforward in the same direction in which the car can be seen to be moving. But suppose that he does not know the schedule, and has no reason to know that the particular car which he sees coming up the street will turn round the corner, rather than go straightforward, what would be the duty of the street-railway company and its employees? Obviously the duty of the motorman of a street-car would not differ from the duty of a driver of a pair of spirited horses, or of the chauffeur of an automobile. If a pedestrian were on one side of a street and out of the track of a rapidly-moving carriage drawn by a pair of spirited horses coming up the same street, it would certainly be as reasonable for him to suppose that the carriage would go straight up the street as otherwise; and if the driver should conclude, just as he reached a corner where a large number of persons were standing, to turn into the cross street and thereby change the existing situation, as related to those standing in the street, by taking a course which they did not anticipate, it would seem to us that the driver should check his speed, so as not to endanger the safety of those in the street, and also give them warning of his approaching presence. And

while it is not for this court or any other court to say, in the first instance, that the failure either to check the speed of the horses or to give warning that he intended to turn his course instead of going straightforward would be negligence, still, in such a case (if injury to a person in the street resulted from the sudden turn of the driver), it would certainly be a question for a jury whether it was or was not negligence. Again, it must be borne in mind that negligence is a variable quantity in the equation from which damages are deduced, and what may be due care under one state of facts might be gross negligence under a state of circumstances entirely different.

While a street-railway company's servants in charge of a car might properly and without negligence maintain a high rate of speed and not be required to give any warning, in traversing a street but little used, and where it is not crossed by other streets, and under some circumstances need not check the speed or ring a bell, or give any other signal to warn a single pedestrian crossing the track and evidently aware of the approach of the car, on the other hand, if the company's agents in charge of the car could see that the street was crowded with people, and especially if they saw that the attention of the crowd was absorbed by some matter which had aroused unusual interest and excitement, they would, on account of that very circumstance, be charged with the duty of using a greater degree of diligence than in the case first stated. It is a matter of common knowledge that in cities which are large and populous centers large crowds at times assemble,—perhaps to visit a fair, or to attend a reunion or political meeting, or religious, scientific, or educational convention,—and certain streets for a time are congested. It may be a military parade; it may be a school procession; it may be a crowd receiving the election returns, or a concourse awestruck by some sudden tragedy. In all such cases it would seem to be the duty of those in charge of so dangerous an instrumentality as a street-car (although the railway company has a right of passageway, on account of the nature of its duties to the public, which may be superior to that of the traveler on foot) to take notice of the extraordinary condition which surrounds them, and govern themselves accordingly. If unusual warning is necessary to clear the track, unusual warning should be given. If the safety of any one of the crowd in front of the car

requires that the running speed be reduced or that the car be stopped until a way can be opened for its passage, whichever of the two is necessary should be done. And it is not only within the personal observation of the members of this court, but it is a matter of common knowledge, that it is customary for motormen in charge of street-cars to observe great care and extraordinary precaution in passing along a street in which some unusual occasion or some extraordinary incident has temporarily assembled a crowd. It can not be held, as. an invariable rule, that a bell should be rung or a gong sounded, as a warning to one who is in the street, before a street-car which has stopped resumes its journey. Whether in any particular instance the omission to give warning to one who is using the street is negligence must depend upon the peculiar conditions and circumstances of the particular case. The duty of diligence is, of course, a relative duty; and while the driver of a street-car might not be under any duty whatever to ring a bell or give any other warning to one who is so far away as to be in no danger whatever of being injured by the car, the presence of another near the track, and seemingly about to cross it or about to come in range of the car, might create a duty as to such second person which would require that every possible instrumentality be used to warn him of the approach of the car.

Under the allegations of the petition, the plaintiff would not have been injured, but for the unusual speed at which the car rounded the curve, and which caused the rear end of the car to swing out far enough to strike him; and even this injury could have been prevented if he had been warned that the car intended to start and was to go around the curve instead of going straightforward up Whitaker street. The petition should not have been dismissed, though the plaintiff was standing in the roadway of a public street, with his back to the car, and engrossed in watching an itinerant vender, and though he saw the car coming on Whitaker street, and saw it when it stopped. There were two tracks leading from the point where the car stopped, and the plaintiff was not bound to know the schedule of the street-car company, or to know whether the car in question would more likely go around the curve near which he was standing than proceed in the same direction in which it was originally going before the car stopped. It is a jury question, and for the jury alone, whether, under the

circumstances detailed by the petition, either a failure to ring a bell as a warning that the car was about to start, or the speed with which the car rounded the curve, was or was not negligence, and whether either or both of these were proximate causes of plaintiff's injury. We think it is for the jury to consider and determine whether the failure of the motorman to give warning of his intention to turn the curve was negligence as related to the plaintiff. For these reasons we think both the special demurrer and the general demurrer should have been overruled. Except as to that portion of the street used by the tracks of a street-car company, and the additional lateral space necessary for the passage of its cars, pedestrians have rights to the use of streets of a city which are equal to those of a street-car; and failure to ring the bell or to give some other warning that a car which has stopped is about to resume its journey may be negligence as to a pedestrian who is either passing in the street or has stopped in a position where it is probable that he may be injured unless he is advised of the approach of the car.          *Judgment reversed.*