Russell, J.
The plaintiff in the lower court obtained a verdict of $2,500 for the value of the life of her minor son,-whose death was alleged to have been caused by the negligence of the defendant telegraph company. It appears from uncontradicted evidence, that *261 while on his way to church, or returning therefrom, the plaintiffs minor son, John Harris, came in contact with a telegraph wire of the defendant company, which was so heavily charged with electricity that his death resulted. It is insisted in the brief of learned counsel for plaintiff in error that there was no evidence that the plaintiff was, at the time of the death of John Harris, dependent upon him, nor any evidence that he contributed to her support; and that the verdict should be set aside for this reason, as well as because it is in other material respects unsupported by the evidence. It is also contended that the court erred in his charge to the jury in the several respects to which reference will hereafter be made. Hpon careful consideration of the record we find no error of such materiality as to require the grant of a new trial.
1. As to the complaint that the verdict is without evidence to support it, in the very essential particulars of dependence and contribution, we need only say that no proof was submitted on the part of the defendant, nor did any evidence drop from any of the witnesses for the plaintiff, tending to dispute the uncontradicted testimony that John Harris materially aided in the support of his mother, who, according to the evidence, was necessarily dependent, upon him for this assistance. And it appears that even a very few days prior to his death he had made such contribution to her support. It is true that the deceased had left his mother and his home in Alabama about a week before his death; but there is evidence in the record that he had previously done the same thing) and that during both absences he had sent at least a part of his earnings to his mother, who depended upon him in part for her livelihood. It is well settled that the dependence of the parent upon the child, referred to in §3828 of the Civil Code, need only be a partial dependence, and that it is sufficient if the contribution made by the child in aid of the parent’s necessities be a substantial contribution. Daniels v. Savannah &c. Railway Co., 86 Ga. 236 (12 S. E. 365); Central Railway Co. v. Henson, 121 Ga. 462 (49 S. E. 278), and authorities therein cited. The only support which the contention of the plaintiff in error finds in the evidence is from the inference suggested by the fact that John Harris had run away from home and had abandoned his mother at the time of his death; and this inference is fully rebutted. It is true that testimony was introduced for the purpose of impeaching the evi *262 denee of some of the witnesses; but it is evident from the verdict that the jury preferred not to discredit the witnesses sought to be impeached by proof of contradictory statements.
2. In the first ground of the amendment to the motion it is insisted that the court erred in instructing the jury that if the plaintiff showed negligence on the part of the defendant, .and further showed that that negligence caused injury, it would not be necessary for the plaintiff to show wilful and wanton negligence. The plaintiff in error insists that the plaintiff, having charged in her declaration that the negligence was wilful, was compelled, if she recovered at all, to recover under the allegations of her petition. It is of course true, as a general rule, that a plaintiff can recover only upon the allegations of negligence averred, and upon no other than those allegations. But, as this court has several times held, a cause of action, an averment, or an allegation is to be classified with regard to the substance of the statements therein contained, and without regard to the nomenclature attributed thereto, even though it be in the pleadings themselves. Especially when inquiry is being directed to the nature of a right to be established or defense sought to be raised, and when there is a plain statement of the facts, must the mere conclusion and denomination of the pleader be disregarded. In the present case the facts which constituted the alleged negligence are fully and plainly set forth in the petition; and whether, according to the conclusion of the pleader, these facts constituted wilful and wanton negligence, or did not, was entirely immaterial, and did not in the least affect either the plaintiff’s right to recover or the absence of such right. The petition set out such facts as invoked the rule of ordinary diligence, and the gist of the action and the plaintiff’s rights thereunder depended upon whither there was a failure to use such diligence as the law required. The fact that a pleader may, in some portion of his petition, characterize a defendant’s conduct as grossly negligent does not change the rule of evidence upon the subject of the defendant’s duty. It was proper for the court, after having read the averments of the plaintiff’s petition, which the defendant denied, and having stated that the burden of proof was.upon the plaintiff to prove the averments of her petition, to state to the jury, by way of qualification, that the case was not an exceptional one, and that the plaintiff was not required to prove any greater *263 degree of negligence than was involved in the failure to exercise ordinary diligence.
3. It is insisted that the instruction, “I charge you, gentlemen, that if you find from the evidence that the defendant, the Western Union Telegraph Company, maintained at the place alleged in this declaration wires and poles along which was conducted an electric current, and if you further believe from the evidence that such wires were capable of transmitting a current sufficient to endanger or destroy human life, then I charge you that a duty existed upon the part of the defendant telegraph company towards the public and towards the deceased,” was not authorized by the evidence. We are not exactly clear that we fully comprehend this assignment of error. It would seem to be too indefinite to raise any point for consideration; but if, as suggested, a complaint is sought to be made that there was no evidence which would have authorized the court to refer to the jury the question whether the telegraph company’s wires were capable of transmitting a current sufficient to destroy human life, then we have no hesitation in holding that the charge, which is otherwise sound and unobjectionable, was authorized by the evidence; because there is no dispute in the record that the boy’s death was caused by an electric current of some kind transmitted by the very wires in question.
4. The third and fourth grounds of the amended motion will be considered together, because they present the same point in a different form, by excepting to two detached portions of the court’s instructions to the jury, relative to the provisions of §3828 of the Civil Code. The complaint made is, that the court’s statement <of the law is incorrect, and that the court erroneously charged the jury that this mother could recover for the homicide of her minor son if she was dependent upon him or if he contributed to her support, — whereas the plaintiff was not entitled by law to recover unless she was both dependent upon the minor son and he contributed to her support. To properly determine the merit of this exception we will consider all that the trial judge said upon the subject, and the connection in which the language was used. The court first charged the law as it appears in the code. In other words, he substantially quoted the statute which gave birth to the plaintiff’s right of action, the excerpt to which exception is taken in the third ground of the motion for new trial being, “I charge *264 you that a mother, or, if no mother, a father, may recover for the homicide of a child, a minor upon whom he or she is dependent, or who contributes to his or her support, unless such person left a wife, husband, or child.” It is true that, following the ruling in Clay v. Central Railroad Co., 84 Ga. 345 (10 S. E. 967), our Supreme Court has several times held that the legislature intended to use in the statute the word “and” instead of the word “or;” but certainly it can not be said to be erroneous to give in charge, in its identical terms, the statutory provision of law which is the basis of a plaintiff’s action, if its real meaning is thereafter fully explained to the jury. Indeed this is a proper method of instruction upon the law. We may say in passing that the construction placed upon the word “or” (in the act of 1887 now embodied in §3828 of the code) was somewhat surprising to the writer, as a member of the legislature of 1887 which passed that act, as it no doubt was to the author of the original bill and others interested in its passage. But conceding that Judge Blandford properly construed the intention of the legislature when he changed “or” into “and” in the Clay case, supra, it must be considered that this was no doubt done because the two phrases “upon whom she or he is dependent,” and “who contributes to his or her support,” were assumed to have such an identity of meaning as to render them well-nigh synonymous, or such an identity as would cause the thought of dependence and contribution to be included, the one within the other. The language used was construed somewhat as if one should say four cows or quadrupeds. Naturally, the quadrupeds would have to be cows, and all cows are quadrupeds; therefore the language could be construed as four cows and quadrupeds. After placing before the jury the section of the code upon which the plaintiff’s right of action depended, the judge proceeded next to state the plaintiff’s contention as contained in the averments of the petition. “The plaintiff in this case, Ellen Harris, sues as the mother, alleging that she is the mother of John Harris, a minor; that he was killed; that-she was dependent upon him, or that he contributed to her support, and that the minor left no wife, husband, or living child. Look into the evidence, gentlemen, and see whether or not those facts be true. Is this a minor ? Was John Harris, her minor son ? Was he killed ? Did he leave a wife, husband, or child surviving him? If you find all those things to *265 be true, then look into the evidence and see whether or not this plaintiff, Ellen Harris, was dependent upon the deceased, John Harris, or whether the deceased, John Harris, contributed to her support.” The judge then charged the jury properly that 'by the word “dependent” the law does not mean absolutely and exclusively dependent, and that the plaintiff would be dependent upon her minor son, in a legal sense, if she was dependent upon him in any appreciable degree, and explained that by the term- “contribute to her support” is meant a substantial contribution to her support. The court next informed the jury that though where there is no father the mother would be entitled to the earnings of her minor son, as a matter of law, yet this was not the basis of the suit then pending. Having thus first repeated, in its identical language, the section of the code which authorized the suit to be brought, and having stated the contentions of the plaintiff, and having relieved the minds of the jury of any possible confusion by informing them that this was not a mere suit for the value of the services of a minor child until he reached his majority, the court proceeds to define the meaning of the statute in exact accordance with the decisions of the Supreme Court upon the subject, by saying: “But what the law contemplates, gentlemen, is not simply a right to earnings, but the -law contemplates the situation in which the minor is actually contributing to his parent’s support and that the parent is, at the túne, dependent in an appreciable degree on the minor. If you find these things to be true, all of them, and further believe that the homicide happened through the negligence of the defendant'telegraph company and without fault on the part of the deceased, as I shall hereafter refer to them more at large, then the plaintiff would be entitled to recover, and under such circumstances she would be entitled to recover the full value of the life of her child, that is to say, not merely an amount which the deceased may have contributed to her support, but for the full value of the life of the deceased.” When fragments of the charge detached from their settings are viewed separately, there may appear ground for criticism; but when the charge of the court upon this subject is read as a whole, it is impossible to conclude that the jury could have misunderstood the lucid and correct exposition of the law given upon this subject by the trial judge. Though the court necessarily used the word “or” in quoting the statute, and repeated *266 it in his statements .of the contentions of the plaintiff, he finally concluded, when giving the law authoritatively, by using the conjunction “and,” and not the disjunctive “or,” and the jury were told in addition that “all of them ,” including not only contribution and dependency, but the other essential facts to_ which allusion was made, must be found by the jury to be true before the .plaintiff would be entitled to recover. It is interesting to note that in Central of Georgia Ry. Co. v. Motz, 130 Ga. 414 (61 S. E. 1) — and the writer thinks that the decision in that case is more in accord with the true intention of the General Assembly in the passage of the original act, which was a decided innovation — the petition, which contained, as to this point, only the averment that “the plaintiff’s son was a strong, healthy boy, and was rendering to him, prior to the time of the son’s death, services of the value of $5 per month, and his earning capacity would increase,” was held good against. a general demurrer. This decision would seem to indicate that while, in deference to precedent, “or” may still be interpreted “and,” for the reason that it is perhaps true that in all cases of substantial contribution to a parent’s support the parent is appreciably dependent upon the minor for support to the extent of such contribution, the latter clause, “or who contributes to,” may be treated as intended merely to qualify and limit the term “dependent,” so as .to indicate a legislative intent that only a very slight dependence, such as is found in an actual contribution for a parent’s support, is all that the statute contemplates.
5. In the 5th ground of the amendment to the motion complaint is made that the court erred in charging that the mother, if there is no father, would be entitled to the earnings of her minor son until such time as she had relinquished her control; the assignment of error being that it was not a correct and true statement of the law applicable to the case, inasmuch as the plaintiff was seeking to recover the full value of her son’s life, and the suit not being one to recover for the services of a minor child. At first sight the complaint might seem not to be without merit. But this impression is removed when the excerpt of which complaint is made is read in its connection, and it appears that the court was about to draw the distinction between the mere right of the parent to have the earnings of her minor son and the absolute necessity of proving that, regardless of the child’s legal obligation, *267 he was actually contributing to his mother’s support. After stating that while it was true that the mother, as a matter of right, was entitled to the earnings of her minor son, the court proceeded to say that “the law contemplates the situation in which the minor is actually contributing to his parent’s support, and that the parent is, at the time, dependent in an appreciable degree, upon the minor.” We consider the instruction of which complaint is made, in the connection in which it was given, as being favorable to the plaintiff in error rather than hurtful. It in effect told the jury that they could not award damages to the plaintiff merely because she was entitled to the value of her minor son’s services, but that in order for her to recover it must appear that the deceased was actually contributing to his mother’s support, and that the mother was dependent upon that assistance. In other words, the jury were told that in the action pending before them it mattered not how valuable the services of the deceased might have been, nor that the mother was entitled, as a matter of right, to the value of the services of the minor son, she could not recover against the defendant unless she was dependent upon the son (which would not affect her right to recover for services), and unless he contributed to her support (which likewise would not defeat a recovery in an action brought by a mother for mere value of services of her minor son). As well argued by counsel for defendant in error in their brief, the statute is broader than the right which the law gives the parent to contribution from the child. It reaches not only the cases where the child is under legal obligation to the parent, but extends to cases where there is no such legal obligation. The greater'includes the less, and the fact that the parent is entitled to his earnings is a powerful circumstance bearing upon the question. See Savannah Electric Co. v. Bell, 124 Ga. 664 (53 S. E. 109), and citations. Well-recognized interdependence of parent and child upon each other during minority and the right of the parent to the assistance of his minor child might tend to repel any inference that the dependence and contribution shown to have existed in the past, growing out of the relation, had been terminated as long as the relation itself existed, and in view of the fact that there was no evidence of a relinquishment of the parental control. As we said above, we think the reference to the right of the mother to the earnings of her minor *268 child tended rather to accentuate the necessity for proof, on the plaintiffs part, of dependence on her minor son and of actual contribution to her support made by him, and for that reason Was favorable to the plaintiff in error. But if we should be wrong in this view, we are quite sure that it was not such an error as would authorize the grant of a new trial.
6. Further complaint is made that the court erred in expressing an opinion upon the facts in the case, in stating to the jury that the deceased, John Harris, was not a trespasser, for the reason that he had a right to be where he was at the time of his death. We do not think that the error here assigned is such as would warrant a reversal. It is uncontradicted in the evidence that John Harris met his death on one of .the public streets of the city of Albany. The petition alleged that the point where the deceased lost his life, by reason of the defendant’s wires hanging too near the ground, was in North street, a public street in the city of Albanjr. The answer of the defendant was not sufficient to raise any issue upon this subject. The answer says that “this defendant owns, controls, and operates an electric wire within the limits of the city of Albany, said State and county, but says that after said wire leaves said North street the poles that carry said wire are on the right of way of the Central of Georgia Railway Company, and that then said wire is not in any public street, except where said Central of Georgia Railway Company is in said street.” According to the answer, the Central of Georgia Railway Company runs along North street; but the occupancy of the street by the railway company, especially in view of the fact that there is no evidence of any specific grant of authority to the railway company for that purpose, does not give the company any right to the use and occupancy of the street superior to that of a pedestrian who may desire to use a highway dedicated to the whole public. It thus being conceded that the deceased met his death in a public street, there was no impropriety in the judge stating to the jury as a matter of law that “John Harris had a right to be there.” While the provisions of §4334 are to be strictly enforced, the application of this section must necessarily be confined to facts as to which there is an issue; and it has been recognized that there is a difference as to words which amount to a legal conclusion rather than to an expression of opinion. Furthermore, it has *269 been held that an intimation of .opinion on a matter conceded, or even the statement of facts admitted to be such, is not improper. Facts conceded may be characterized as conceded facts in charging the jury. Judge Bleckley in Brantley v. Huff, 62 Ga. 536, in ruling upon this subject, says: “What is not conceded either in the pleadings or by the parties or their counsel in the presence of the court can not be recited to the jury from the bench as conceded; but where a matter has been stated in the charge as a concession, and it does not appear, on the authority of the judge himself, that no such concession was in fact made, the presumption is that it was made.” In Savannah &c. Ry. Co. v. Flannagan, 82 Ga. 579 (9 S. E. 471), the complaint that the judge expressed an opinion upon the facts was again overruled, because it appeared that the matters in question were admitted or conceded. See also Wilson v. Atlanta & Charlotte Ry. Co., 82 Ga. 390 (9 S. E. 1076). In East Tennessee Ry. Co. v. Markens, 88 Ga. 61 (13 S. E. 855, 14 L. R. A. 281), Judge Lumpkin, delivering the opinion of the court, says: “While a judge is forbidden to express or intimate his opinion concerning a question of fact about which there is any doubt whatever, he may with propriety say to the jury that there is no evidence to support an alleged fact, when such statement is undoubtedly true. The object of §3248 of the code [now §4334] is to prevent judges from interfering with the functions of juries in determining contested issues of fact when there is proof on both sides; but when an alleged fact is entirely unsupported by evidence, the judge may .aid the jury by so informing them, thus relieving them of that much difficulty in reaching a correct conclusion in the ease.” The case at bar is not unlike the case of Holifield v. White, 52 Ga. 567, 569. See also Underwood v. American Mortgage Co., 97 Ga. 238 (24 S. E. 847); Southern Ry. Co. v. Chitwood, 119 Ga. 28 (45 S. E. 706); Shields v. Georgia Ry. & El. Co., 1 Ga. App. 175 (57 S. E. 980). The legal effect of the undisputed evidence in this case was to show that John Harris was not a trespasser, but had a right to be where he was at the time of his death; and the statement of which complaint was made is not, strictly speaking, an expression of opinion as to what facts had or had not been proved, hut the statement of a necessary legal conclusion arising from undisputed facts, and consequently not *270 erroneous. It can not be contended that the telegraph company had the right to block a highway in the city of Albany so as to prevent the passage- of pedestrians, nor did it have any right to leave its wires so close to the ground as to be a menace to the safety of passers by. It be'ing undisputed that the point where the death of John Harris occurred was in a public street, it is in fact immaterial whether the poles and wires of the defendant company were on the so-called right of way of the Central of Georgia Railway or not; because, as we have heretofore held in Cordray v. Savannah Electric Co., 5 Ga. App. 625 (63 S. E. 710), the pedestrian had as much right to the public thoroughfare as either the railroad or the telegraph company. ’ It appears that the wires were down at this particular point for about eighteen days. Under all authorities this was negligence on the part of the telegraph company. See Jones on Tel. §§188, 19-4, 185; 27 Am. & Eng. Enc. Law, 1015, 1016; Haines v. Gas Co., 114 N. C. 203 (41 Am. St. R. 786, 26 L. R. A. 810, 19 S. E. 344); Atlanta Con. St Ry. Co. v. Owings, 97 Ga. 663, 667 (25 S. E. 377, 33 L. R. A. 798); Western Union Tel. Co. v. Griffith, 111 Ga. 551 (30 S. E. 420). Whether the wire was surcharged with electricity by contact with the wire from the power plant, or whether it was the conductor of a bolt of lightning, it is very plain from the evidence that if due diligence had been used in repairing the line within the period of eighteen days which had passed, the plaintiff’s son would not have been killed by contact with the wire. The jury were authorized, under the evidence, to find in favor of the plaintiff, and might have found a larger verdict than that rendered. Taken as a whole, the charge of the court is without error; and the judgment refusing a new trial is Affirmed.