## WOODSTOCK OPERATING CORPORATION v. YOUNG (two cases).

(Circuit Court of Appeals, Fifth Circuit. October 21, 1920.)

Nos. 3581, 3582.

1. Trial ⟷2—Court has discretion to consolidate actions by parents for death of son.
   It is within the discretion of the trial court to consolidate for trial separate actions by the mother and the father of a minor, to recover for their losses occasioned by the death of the son, since each right of action arose out of the same transaction and involved in a large measure the same evidence.

2. Pleading ⟷205(1)—General demurrers properly overruled, if petition states any cause of action.
   General demurrers to petitions, which challenge no particular averment of the petitions, were properly overruled, unless the petitions stated no cause of action.

3. Parent and child ⟷7(3)—Injury in dangerous employment without parent's consent actionable.
   A petition by a father for the loss of his son's earnings, which alleged that his minor son was employed without his consent and placed at

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dangerous work, as a result of which he was injured, sufficiently states a cause of action to withstand a general demurrer.

**4. Master and servant ⬤⇒258(7)—Petition held to allege negligence as to minor employé.**

Petitions which charged negligence by defendant in putting a minor son of plaintiffs to work on a dinkey engine equipped with defective brakes, and not equipped with gate or railing around the working platform, in operating with brakes which would not work, because equipped with defective lubricator, in employing an unskilled, incompetent engineer to operate the dinkey engine over a defective track, and in failing to warn a minor, who was inexperienced, of the dangers, charged a failure of the master to perform duties incumbent on him, under Civ. Code Ga. 1910, § 3130.

**5. Trial ⬤⇒420—Directed verdict waived by defendant introducting evidence.**

Defendant cannot assign error to the refusal of his motion for directed verdict at the close of plaintiff's evidence where he introduced testimony after the overruling of his motion.

**6. Master and servant ⬤⇒286(2)—Negligence as to minor employé held question for jury.**

Evidence that plaintiff's minor son, employed by defendant, was directed to work on the engine from which he fell, and that the engine and track were defective and the engineer incompetent, *held* sufficient to require submission of the issue of defendant's negligence to the jury.

**7. Courts ⬤⇒366(23)—Construction of state statute by state court is binding.**

The construction of Civ. Code Ga. 1910, § 4424, giving a mother right of action for death of her son, on whom she was dependent and who contributes to her support, as giving a right of action, if there was partial dependency on contribution, and even though the child's earnings are legally due the father is binding on the federal courts.

**8. Death ⬤⇒103(1)—Mother's dependency on son held question for jury.**

Evidence that plaintiff's deceased minor son at the direction of his father, gave his wages to plaintiff, his mother, who used them with the wages of the father in the support of the family, consisting of the father, mother, and five children, *held* sufficient to take to the jury the question whether the mother was dependent on the deceased son and whether he contributed to her support.

**9. Parent and child ⬤⇒7(14)—Request on manumission by father held not supported by evidence.**

In an action by a father for the loss of the earnings of his minor son, evidence that the father had directed the son to turn his wages over to his mother did not warrant giving a requested charge that, if the father had permitted his son to collect his own wages and appropriate them to his own use, the father would have no cause of action.

**10. Trial ⬤⇒260(1)—Requests covered by court's charge need not be given.**

It was not error to refuse requests to charge the jury, where all of them which were free from objection were fully and fairly covered by the charge, which correctly stated the several issues presented.

In Error to the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Separate actions by Mrs. J. C. Young and by J. C. Young against the Woodstock Operating Corporation, consolidated for trial. Judgment for plaintiff in each action, and defendant brings error. Affirmed.

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. P. Acker, of Anniston, Ala., and Arthur Heyman, of Atlanta, Ga., for plaintiff in error.

William W. Mundy, of Cedartown, Ga., Sidney Holderness, of Carrollton, Ga., and G. E. Maddox, of Rome, Ga., for defendants in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The above cases are, respectively, a suit by the mother and father of Carl Young. That of the mother is to recover the full value of her son's life, under the provisions of the Code of Georgia (1910) § 4424, which gives to a mother the right to recover the full value of the life of the deceased for the death of a child resulting from a crime, or criminal or other negligence, upon which child she is dependent, and who contributes to her support, where said child leaves no wife, husband, or child. The second suit is by the father of said Carl Young to recover for the loss of the services of said minor from the time of his death until he would have reached the age of 21 years.

The petitions in each case averred: That deceased was killed on April 15, 1918, being then 17 years of age, by being run over by a dinkey engine, used by the Woodstock Operating Corporation, in operating an iron ore mine. Said engine was used in pushing and pulling ore cars between the ore beds and defendant's washer. That without the knowledge and consent of his parents deceased was employed in the capacity of fireman. That the fireman is required to work on a platform in front of the boiler firebox about 2½ feet long by 2½ feet wide, but there is no bar, chain, or other protection to prevent the fireman from falling off said platform, should he slip or become unbalanced because of the débris on the floor, or as a result of the dinkey running into a depression on the track, or by reason of the sudden acceleration or checking of its speed. That on April 15, 1918, Carl had just finished puting coal into the furnace of one of the defendant's dinkies and shaping up the fire, and was straightening up from a bended posture, when the engineer suddenly ran the dinkey, which was being operated backward, into a depression, without giving Carl any warning, which caused Carl to be pitched forward on the track in front of the dinkey in plain view of the engineer, who saw him while in the act of falling and attempted to apply the brakes, which were not in working order, and could not be applied, and the dinkey ran over Carl's body, causing various injuries which produced his death. That said work was doubly hazardous at the time of Carl's death, because the engineer was backing, making vibrations greater, rendering Carl's footing more dangerous, with nothing for him to fall and catch against, as the ore cars were in front of the engine. That the defendant put on him the triple duty of firing two dinkey engines and attending to the switch; the defendant being short both a fireman and a switch tender.

The acts of negligence charged were: The employment of deceased and placing him at an unsafe place for work, without the knowledge or consent of his parents. Putting him to work on said dinkey; it being contended that said dinkey was not reasonably safe to be operat-

ed in the exercise of reasonable care. Permitting its track to become unsafe, by allowing it to sink on one side, thus creating a perilous position for the fireman when said dinkey reached said place, and allowing deceased to operate said dinkey as a fireman over said track. Putting said deceased to work as a fireman on said dinkey without plaintiff's consent, said dinkey being equipped with defective brakes, and not being equipped with a gate, bar, or chain to prevent the fireman falling as the result of an unusual or sudden movement while being operated over a dangerous, uneven, and unsafe roadbed. Having an inexperienced, unskilled, and incompetent engineer operating said dinkey at the time Carl received his injuries. That the brakes were defective, and would not work, because equipped with a defective lubricator, which failed to oil them, and because an inexperienced engineer had placed too much water in the engine. That the brakes would not work, because one of the hanger rods supporting the brakes and holding them in position was broken, and that it was chained and wired up, and prevented a quick and proper action of the brakes, and they would not hold tight enough to stop the train promptly; also that the engine was not equipped with a steam gauge, so that the engineer in charge could apply the quantity of steam to hold the brakes or to know the quantity of steam.

The defendant demurred to each petition, also answering the same, denying the allegations of the petition, also pleading specially that at the time the deceased received his injuries he was not discharging the duties for which he was employed, nor was he in his proper place, having assumed a position on the dinkey for his own convenience, and not in pursuance of any work that he was employed to do; that the injuries were the result of his own negligence; also that, if the death of deceased was the result of negligence on the part of the engineer, such negligence was the act of a fellow servant, and that the parents of deceased could not recover.

As to the mother, it was specifically denied that she depended on deceased for support or that he contributed to her support. With reference to the suit of his father, it was especially insisted that the father had manumitted his son, allowing him to seek work where he pleased and to appropriate for his own use the entire proceeds of his labor. The cases were consolidated for trial over the objection of the defendant, and this is assigned as error.

[1] The power to consolidate two cases pending in the same court rests in the sound discretion of the court. Mutual Life Insurance Co. v. Hillmon, 145 U. S. 292, 12 Sup. Ct. 909, 36 L. Ed. 706; Lewis v. Baltimore, etc., R. Co., 62 Fed. 218, 221, 10 C. C. A. 446. In this case the right of action of each of these plaintiffs arose out of the same transaction and involved in a large measure the same evidence. It was clearly within the discretion of the court to have consolidated these cases for trial. Denver City Trainway Co. v. Norton, 141 Fed. 599, 73 C. C. A. 1.

[2] Error is also assigned in overruling the demurrers filed to the petitions. These demurrers were general, and no particular averment of the petitions was challenged by special demurrer. Unless, therefore,

the petitions stated no cause of action, the general demurrers were properly overruled.

[3] In the father's case the petition alleged that his minor son was employed without his consent and placed at dangerous work. This alone was sufficient to withstand a general demurrer. Braswell v. Garfield Cotton Oil Co., 7 Ga. App. 167, 66 S. E. 539.

[4] Each petition charged negligence in putting the deceased to work on a dinkey equipped with defective brakes, and being required to work in an unsafe place, because the dinkey was not equipped with a gate, bar or chain to prevent a fireman falling therefrom as a result of a sudden or unusual movement; again that the brakes would not work, because equipped with a defective lubricator, and because one of the hanger rods was broken, thus interfering with the prompt action of the brakes. Further negligence was charged in the employment of an engineer operating said dinkey, alleged to be unskilled, inexperienced, and incompetent; again in having a defective track over which said dinkey was operated; also failure to warn this minor, who was alleged to be inexperienced, of the dangers incident to the employment.

Each of these conditions was alleged to have caused or contributed to the killing of said deceased. These allegations charged a failure of the master to discharge duties which were incumbent on him. Code of Georgia (1910) § 3130: Ocean Steamship Co. v. Matthews, 86 Ga. 418, 12 S. E. 632; Ingram v. Lumber Co., 108 Ga. 194, 197, 33 S. E. 961; Hobbs v. Small, 4 Ga. App. 627, 629, 62 S. E. 91. The petitions therefore stated a cause of action, and were not subject to be dismissed on general demurrer.

[5] Error is assigned on the failure of the court to direct a verdict for the defendant on motion made at the close of the plaintiff's testimony, and renewed at the close of the entire testimony. The defendant, having introduced testimony after the overruling of the first motion, cannot assign error on its denial. Pennsylvania Co. v. Clark (C. C. A.) 266 Fed. 182.

[6] The refusal to direct a verdict at the conclusion of the entire testimony was not error. There was sufficient evidence to require the submission of the case to the jury. The deceased was a minor, who had been engaged for a short time in firing another smaller dinkey engine. On this day he was directed to help coal both dinkey engines and turn the switch, and there was evidence that he was also instructed to fire both dinkey engines between the switch and the washer. He was engaged in firing the larger engine when he fell therefrom and was killed. There was no proof that he had any knowledge of any of the alleged defects in this engine, which he was firing, apparently for the first time, on the day he was killed. There was some evidence of the several acts of negligence charged and of their effect in producing the death of the deceased. This was sufficient to require the submission of the questions of negligence to the jury. Texas & Pac. Ry. Co. v. Cox, 145 U. S. 593, 606, 12 Sup. Ct. 905, 36 L. Ed. 829.

The principal ground urged in argument in support of this motion in the mother's case was that the evidence did not show that the mother was dependent upon the deceased and that he contributed to her sup-

port in any particular. Her suit is based on the statute of Georgia (Code of 1910, §§ 4424, 4425), which provides:

"A mother, or, if no mother, a father, may recover for the homicide of a child minor or sui juris, upon whom she or he is dependent, and who contributes to his or her support, unless said child leave a wife, husband, or child. Said mother or father shall be entitled to recover the full value of the life of said child. The word 'homicide,' used in the preceding section, shall be held to include all cases where the death of a human being results from a crime or from criminal or other negligence. * * * The full value of the life of the deceased, as shown by the evidence, is the full value of the life of the deceased without deduction for necessary or other personal expenses of the deceased had he lived."

[7] This statute has been repeatedly construed by the Supreme Court of Georgia, and its construction thereof is binding on this court. It is well settled that a partial dependency and contribution is sufficient to authorize recovery by the mother of the full value of the life of the deceased child. Savannah Electric Co. v. Bell, 124 Ga. 663, 53 S. E. 109. Nor is the fact that the child's earnings are legally due to the father any reply. It is immaterial that he may be legally entitled to the child's earnings. If the mother actually gets the benefit of the child's labor, with or without the father's consent, she is dependent upon that child, and he contributes to her support within the meaning of this statute. Fuller v. Inman, 10 Ga. App. 680, 689, 74 S. E. 287; Savannah Electric Co. v. Bell, 124 Ga. 663, 664, 53 S. E. 109.

[8] The evidence was that the family, which lived together, consisted of the father of the deceased, his mother, the deceased, aged 17, a brother, aged 14, and four sisters, aged respectively 19, 16, 11, and 4 years. The father was an engineer, earning from $200 to $225 per month. Deceased, by his father's direction, turned over his earnings to his mother, who used them herself, and did some work about the home after he came from his employment. The mother testified:

"It took all the money that the father and Carl made to clothe, feed, and take care of the family, and pay our debts (for doctor bills, drug bills, and different things), and then there was not enough."

This evidence was quite sufficient to require the submission to a jury of the question whether the mother was dependent on the deceased son, and if he contributed to her support within the meaning of the statute above quoted. In a case which has been repeatedly cited with approval the Supreme Court of Georgia held:

"The father, mother and minor children all resided together and were mutually dependent upon the labor of the family for support. The deceased child, although not 16 years of age, performed some labor, and it or its proceeds went into the common stock. Evidence to prove all this, or which tended to prove it, was admissible and if this condition of affairs was established, the deceased son might well be considered as contributing substantially to the support of his mother. Members of the same household who live by their common labor and its proceeds have a mutual dependence one upon another. Certainly so unless it be affirmatively shown that a particular member consumes as much, or more, of the common stock than he contributes to it. Even that would not be a conclusive test, for the services of a child to a mother or of a mother to a child may well be reckoned as contributing substantially to the support of the recipient far beyond any money value which the services may have, and the chief element of dependence may be in respect to personal

services of this nature." Augusta Ry. Co. v. Glover, 92 Ga. 132, 144, 18 S. E. 406, 414.

Where a father sought to recover for the homicide of a minor son, the Supreme Court of Georgia, while holding that, where a father is earning enough for his own support, he cannot be said to be dependent on a minor son, although he is chargeable with the maintenance of others, for the support of whom and himself his earnings are insufficient, held that there was a difference in considering whether a mother was dependent on the earnings of a minor whose earnings went into the common stock. As to her the court said:

"A mother without property is an essentially dependent member of a household consisting of her husband, herself, and their children. She may render many valuable services and perform many onerous duties, but when it comes to obtaining the necessaries of life—food, clothing, fuel, and the other essentials to human existence—she is, in the very nature of things, dependent upon each and every member of the family whose labor produces money or supplies." Georgia Railroad Co. v. Spinks, 111 Ga. 571, 574, 36 S. E. 855, 856.

The case at bar is very different from the case of Trammell v. Southern Ry. Co., 182 Fed. 789, 105 C. C. A. 221, relied on by the plaintiff in error. In that case a mother sued for the homicide of a minor son, who worked in his father's drug store. His services were worth from $75 to $80 per month. His only relation to the support of the mother or her dependency was this labor in his father's business. The father's income from his business was from $250 to $300 per month, and the entire expenses of the family, including those of the plaintiff, which were paid by the proceeds of the drug business, were from $100 to $150 per month. It was held under these facts that dependency of the mother on the son, or contribution by him to her support, was not proven.

The present case comes within the rulings of the Supreme Court of Georgia first above quoted, and the question was therefore properly submitted to the jury.

The court correctly charged the jury as to what constituted dependency on the deceased, and contribution by him to her support, and that if she was not dependent on her son wholly, or partially, as defined, she could not recover, although he gave her his earnings and she put them in the general fund. Augusta Ry. Co. v. Glover, 92 Ga. 132, 18 S. E. 406.

Several assignments of error deal with the admission and rejection of evidence. We find no error in the rulings complained of.

[9] Error is assigned that the court should have charged the jury that if it appeared from the evidence that the father, J. C. Young, had permitted his son to go out and seek employment, and collect his own wages, and appropriate such wages to his own use, such action on the father's part would amount to manumission of his son, and the plaintiff, J. C. Young, would have no cause of action against the defendant. The court properly refused this charge, because there was no evidence that plaintiff Young had authorized the deceased to appropriate his earnings to his own use. On the contrary, the only evidence was that the minor had asked his father for direction as to what he should

do with his wages, and was directed to turn them over to his mother. A charge not warranted by the evidence, or some view thereof, is erroneous. Wilmington Mining Co. v. Fulton, 205 U. S. 60, 76, 27 Sup. Ct. 412, 51 L. Ed. 708. The court fully and correctly instructed the jury as to the effect of a general authority by the father to the son to seek employment as evidence of a consent to such employment.

[10] While a number of requests to charge the jury were made and refused, there is none of them, which was free from objection, that was not fully and fairly covered by the charge of the court, which is contained in the record. Iron Silver Mining Co. v. Cheesman, 116 U. S. 529, 6 Sup. Ct. 481, 29 L. Ed. 712; Beaver Hill Coal Co. v. Lassilla, 176 Fed. 725, 100 C. C. A. 283; Norfolk & Portsmouth Traction Co. v. Rephan, 188 Fed. 276, 284, 110 C. C. A. 254.

The jury were instructed that, if the homicide was caused by the negligence of the fellow servant, and not by the negligence of the master, that the master would not be liable; also that the acts of negligence charged must have been the proximate cause of the death of the deceased.

At defendant's request the jury were instructed that if they believed from the evidence that the engineer, Shiflett, was inexperienced and unskillful, and such inexperience and lack of skill contributed as a proximate cause to the death of Carl Young, and was so obvious that a person of ordinary intelligence, working with him for the time deceased so worked, would have observed it, and said deceased continued to work with said Shiflett, he could not, if living, recover, and his father and mother could not; also as to each of the alleged defects in the track or machinery, if in the exercise of ordinary care the deceased should have known of such defects, the deceased, if living, could not recover, and his parents could not.

The charge correctly stated to the jury the several issues presented by the case and the questions raised by the requests of the defendant, which were not given.

There was evidence to support the verdict, and the judgment of the District Court is therefore affirmed.