GEORGIA RAILROAD AND BANKING CO. *v.* SPINKS.

A man whose earnings are sufficient to adequately support himself is not "dependent" within the meaning of section 3828 of the Civil Code, although he may by law be chargeable with the maintenance of others for the support of whom and himself such earnings are insufficient. Accordingly, a father whose monthly wages were enough to more than afford him individually a support commensurate with his circumstances and standing in life was not, under the provisions of the section cited, entitled to recover the full value of the life of an unmarried minor son tortiously killed, and whose mother had died, although, because of the insufficiency of the father's wages to support himself and also his family, consisting of a second wife and minor children, he received contributions in money from the son while living.

Argued December 9, 1899.— Decided August 9, 1900.

Action for damages. Before Judge Lumpkin. Fulton superior court. April 29, 1899.

*Joseph B. & Bryan Cumming* and *Sanders McDaniel,* for plaintiff in error. *Arnold & Arnold,* contra.

LUMPKIN, P. J. On the trial of action brought by H. D. Spinks, under section 3828 of the Civil Code, against the Georgia Railroad and Banking Company for the full value of the

life of his minor son, Pearl Spinks, there was a verdict for the plaintiff. A motion for a new trial was filed by the company, and to the overruling thereof it excepted. Taking the evidence most favorably for the plaintiff, which is proper since the verdict was in his favor, the facts on which it rests are, in substance, as follows : The death of Pearl Spinks was occasioned, without fault on his part, by the negligence of the company. He had never married, and his mother died before he was killed. At and before the time of the homicide, the earnings of H. D. Spinks exceeded $100 per month, and they were largely more than sufficient for his individual support. He had a family which included a second wife and minor children who were dependent upon him. His wages were not sufficient to afford him and them a support commensurate with their circumstances and standing in the community in which they lived, and the son before his death made contributions in money to his father, which the latter used in maintaining himself and family.

The motion for a new trial, the general grounds of which were abandoned, raises no controversy as to the amount of the verdict, and really presents for decision here the sole question : Was the plaintiff, upon the state of facts above disclosed, entitled to any recovery at all from the defendant? This question, differently stated, is resolvable into the inquiry : Was H. D. Spinks a "dependent" person within the meaning of the code section on which his action was predicated? It declares: "A mother, or, if no mother, a father, may recover for the homicide of a child, minor or sui juris, upon whom she or he is dependent, or who contributes to his or her support, unless said child leave a wife, husband, or child. Said mother or father shall be entitled to recover the full value of the life of said child." After full reflection and careful deliberation, we are satisfied that the plaintiff was not "dependent" in the sense in which this word was used in framing the statute under consideration. In *Smith* v. *Hatcher*, 102 *Ga.* 160, the opinion was expressed that it is a harsh one and should be strictly construed. But for it, a father's interest in the life of a minor child would be limited to the value of his services during minority, and the former would have no interest at all in the life

of an adult child. So much, therefore, of the statute as confers upon parents the right to sue for the wrongful killing of a child is in large measure punitory, and hence the reason for holding that at least this portion of the homicide act should be subjected to strict construction. It is not, however, a purely penal act; for if the General Assembly had intended that for every death resulting from crime or negligence a right of action should arise, it would have taken care to so provide, and in no case would a plaintiff be wanting. The act therefore is, to a considerable extent, compensatory in its character. This being so, what was its design relatively to the compensation of parents? We think that in this respect its underlying principle was to provide for parents of both sexes who, by reason of poverty, age, or physical infirmity, were incapable of supporting themselves, and especially for mothers without means who, because of this and of their sex, were so incapable. The condition of dependence contemplated by the General Assembly was that of the parent with relation to his or her personal need of aid in obtaining a livelihood. We can not believe it was the legislative intention to assist a self-sustaining father in taking care of others whose support he had voluntarily undertaken or with which he was legally chargeable. The true spirit of the law was to help both mothers and fathers who were in a substantial degree themselves dependent upon a child, and not to help members of their families who were dependent upon them or the child. If the General Assembly had been legislating with reference to need of aid arising from the existence of a legal obligation to support others, it seems certain that the right of action would have been given exclusively to the father in every case where there is one; for a purpose to benefit members of a family dependent upon the head thereof, or to benefit him because under the duty of maintaining them, would have been best accomplished by conferring upon him the right to sue even if the mother should be in life. But this is not what the law does. The father can not sue at all for the value of the child's life if there is a mother, which shows most conclusively, we think, that the individual dependence of the mother or father, as the case might be, was what the legislature contemplated. There is no hint in the law that a

brother or sister of one tortiously deprived of life shall have a right of action because of the homicide, and no implication that such brother or sister shall have an indirect benefit because of the right of action given to the parent.

The cases of *Daniels* v. *S., F. & W. Ry. Co.,* 86 *Ga.* 236, *R. & D. R. Co.* v. *Johnston,* 89 *Ga.* 560, *Augusta Ry. Co.* v. *Glover,* 92 *Ga.* 132, and *A. & C. A. L. Ry. Co.* v. *Gravitt,* 93 *Ga.* 396, do not, we think, conflict with the ruling now made, or with any of the views above expressed. They are authority for the propositions, (1) that to entitle a mother to recover for the wrongful killing of her child, it is not incumbent upon her to show that she depended upon him alone for a livelihood or that he furnished her entire support, but that partial dependence upon the child's labor, accompanied by substantial contribution therefrom to her maintenance, is sufficient; and (2) that where a family of working people, including parents and a minor child, were mutually dependent upon the labor of one another for a living, and the child rendered valuable services of which the mother got the benefit, she was dependent upon him if he thus contributed substantially to her support. In the *Glover* case, upon which counsel for the defendant in error mainly rely, the precise ruling was expressed as follows: "Where father and mother and minor children all reside together and are mutually dependent upon the labor of the family for support, a minor child over fifteen years of age, whose labor or the proceeds of it comes into the common stock, is to be considered as contributing substantially to the support of the mother." It is to be observed that in all these cases the action was brought by the mother. A mother without property is an essentially dependent member of a household consisting of her husband, herself, and their children. She may render many valuable services and perform many onerous duties, but when it comes to obtaining the necessaries of life, — food, clothing, fuel, and the other essentials to human existence, — she is, in the very nature of things, dependent upon each and every member of the family whose labor produces money or supplies. This is the way in which every humane person regards a mother in such a situation. It is, ordinarily, quite different as to a father. Manhood which is self-sustaining, and more than self-

sustaining, is not a condition of dependence. Minority is an element of dependence in both males and females, and the female sex of itself constitutes such an element in adults, but not so as to the sex masculine. Our homestead system is illustrative of the view that fathers are independent and mothers and children dependent; and this view, so far as relates to females, is further illustrated by the cry of the age, by and in behalf of women, to widen their field of employment so that they may lessen their dependence or rescue themselves from their dependent position. The contention of counsel for the defendant in error may derive apparent support from some of the language used by Chief Justice Bleckley in the opinion delivered in the *Glover* case, but what he said should be considered in the light of the facts with which he was dealing. That case, properly understood, is not authority for holding that a full-grown man, not rendered by age or disease incapable of working and deriving his daily support from his own labor, is dependent upon any one but himself. He is the very type of a self-sufficient, self-sustaining human being, and is really much better off than he would be with money enough to produce an income equal to that which his labor yields him, but without health or strength to labor at all. In dedicating his poems to the Caledonian Hunt, Burns wrote: "I was bred to the plough and am independent." This is good sense, good spirit, and good law.

*Judgment reversed. All concurring, Lewis, J., dubitante.*