## CENTRAL OF GEORGIA RAILWAY COMPANY $v$. MOTZ.

1. A petition by a father to recover damages for the death of his child alleged as follows: Plaintiff's son, nine years of age, with two other boys, went to a public-road crossing over the tracks of a railway, in an unincorporated town. His companions were expecting some freight, consigned to their parents, to arrive on a local freight train, and the plaintiff's son intended to assist them in moving it, upon its delivery. The local freight train was standing on the main line of the railroad, and freight was being unloaded over "skids" extending from the cars across the side-track, which lay between the main line and the station building, to the platform. While this was in progress, the public-road crossing was obstructed by the standing cars, and the plaintiff's son and his companions stood on the crossing between the side-track and the main line, a short distance from the station and in plain view of the employees who were unloading the freight. A through freight train, going in the opposite direction from the local train, approached, and in order that it might pass on the side-track, the switches were placed to effect that result. It entered the side-track at a speed of about twenty miles an hour, without blowing the whistle, or ringing the bell, or checking its speed, and thus proceeded along the side-track toward the crossing. The plaintiff's son and his companions neither saw nor heard the approaching train, because the local train was just then put in motion, thus engrossing their attention; and the noise made by the local train prevented them from hearing the other train until it was upon them and they were caught in the narrow space between the two tracks along which the moving trains were passing. Frightened and terror-stricken, they endeavored to escape from their perilous position by running along the ground between the two trains until they could outdistance the engine of the local train and pass over the track in front of it. While thus endeavoring to escape, the plaintiff's son was struck by the through-freight train, causing his death. The boy was in the exercise of all due and reasonable care, and his death resulted from the gross carelessness and negligence of the defendant. *Held*, that the petition was not subject to general demurrer.

2. Where, at the appearance term of the case, a general and a special demurrer were filed, the latter was not amendable at a later term by adding thereto new and independent grounds of demurrer.

Argued January 8,—Decided March 22, 1908.

Action for damages. Before Judge Cann. Chatham superior court. May 3, 1907.

Anton Motz brought suit against the Central of Georgia Railway Company to recover damages for the homicide of his son, Horace. The petition alleged, among other things, as follows: On November 29th, 1905, plaintiff's son, a boy nine years of age, went with two companions, boys of about the same age, to a public-road crossing over the tracks of the Central of Georgia Railway,

in the unincorporated town of Pooler, in Chatham county. His companions were expecting some freight, consigned to their parents, to arrive on a local freight train bound from Savannah to Macon. Plaintiff's son intended to assist his companions in moving the freight after the same had been delivered to them. The local freight train was then standing on the main line of the defendant, and freight was being unloaded over skids extending from the cars across the side-track, which lay between the main line and the station building, to the platform of the station. While the freight train was being unloaded, the public-road crossing was obstructed by the standing cars, and plaintiff's son and his two companions stood on the public crossing between the side-track and the main line, not more than twenty steps from the station. They were in plain view of the crew of the freight train unloading freight. While the boys were standing on the crossing, a through freight train, bound from Macon to Savannah, approached. The crew of the local freight train, in order that it might stand on the main line and be unloaded, had opened both switches of the side-track, to permit the through train to pass. The through train entered the west switch of the side-track at a speed of about twenty miles an hour, and, without blowing the whistle, or ringing the bell, or checking its speed, or otherwise complying with the requirements of the law, proceeded along the side-track toward the crossing. The plaintiff's son and his companions neither saw nor heard the through train as it approached the crossing, because the local train which was standing on the main line was put in motion, thus engrossing their entire attention. The noise made by the moving of the local train prevented the boys from hearing the approach of the through train until it was upon them, and they were caught in the narrow space between the two tracks on which the moving trains were passing. Frightened and terror-stricken, they endeavored to escape from their perilous position by running on the ground between the two trains until they could outdistance the engine of the local train and pass over the track in front of it. While thus endeavoring to escape, plaintiff's son was struck, run over, and killed by the through train. The plaintiff's son was a strong, healthy boy, and was rendering to him, prior to the time of the son's death, services of the value of five dollars per month, and his earning capacity would

increase. At the time of the homicide the boy was in the exercise of all due, ordinary, and reasonable care, and his death was due to the gross carelessness and negligence of the defendant company, in that its employees in charge of the local train did not clear the public crossing, "as required by law," and did not warn the plaintiff's son of the approach of the through train before the local train was put in motion, and in that its employees in charge of the through train did not comply with the law while approaching the public crossing, by blowing the whistle, ringing the bell, and checking and keeping checked the speed of the train, and in not stopping the through train when the perilous position of plaintiff's son was discovered, or could have been discovered in the exercise of ordinary care.

The defendant demurred generally to the petition. The demurrer was overruled, and it excepted.

*Lawton & Cunningham* and *H. W. Johnson,* for plaintiff in error. *Twiggs, Oliver, Gazan & Oliver,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

Anton Motz sued the Central of Georgia Railway Company to recover damages for the homicide of his son, nine years of age. A demurrer to the petition was overruled, and the defendant excepted.

It was argued, that the son of the plaintiff was not a traveler or person proceeding to cross the track on the public road, but that he had gone to the place where he was injured, with his companions, to assist in removing some freight after it should be unloaded, and that if he had any right to be there or any duty to perform, it was to be at the station or on the platform. A public highway is primarily for public passage; but we can not say that if one temporarily stops on it, he has no right to complain if it is obstructed; nor that an obstruction of a public road where it crosses railroad tracks may not, in connection with other facts, constitute negligence as to one who is standing upon the crossing, if he is thereby put in peril from another train of the same company, run at a high rate of speed and without giving signals, on a track near to and parallel with that on which the obstructing train stands. Certainly the situation of the obstructing train, if not in itself an independent act of negligence, would constitute a part of the surroundings to be considered in connection with the method

of operating the other train which directly caused the injury. The mere addition of the words "as required by law," to the statement that the local freight train did not clear the public crossing, neither added to nor detracted from the allegation of facts.

It is further contended that, as the boy was not standing upon the track, but between the tracks, there was no negligence on the part of the employees in charge of the local freight train in not warning him of the approach of the through freight train before putting the former train in motion. It was alleged in the petition, that the space between the tracks was narrow, and that the boy was in a perilous position between the two trains; and also that the noise of the starting of the local freight train just before the through train arrived prevented him and his comrades from hearing the latter train. If the boys were known to be in a position which would become perilous by the passing of the two trains, and the agents in charge of the one which had been standing at the station knew of their position and of the approach of the other train, and the employees on neither train gave them any warning, although the noise of the starting train was calculated to prevent them from hearing the other one, the jury might think that there was negligence; and we can not say, as matter of law, that there was none.

It was contended also that the statute touching giving signals and checking speed at public-road crossings was not applicable, because the son of the plaintiff was standing between two tracks when the through freight train approached, and was not passing over the tracks, and that the point where he was killed was not on the crossing, but a short distance therefrom, where he had run in an effort to leave the narrow space between the tracks and cross ahead of the train which had just started. While the primary purpose of the law in regard to erecting blow-posts, blowing the whistle, and checking the train in approaching public crossings is for the protection of persons or things which may be using the crossing for passage, and the engineer is required to check and keep checking the locomotive "so as to stop in time should any person or thing be crossing said track on said road" (Civil Code, §2222), we can not say that, if a person is lawfully standing upon a public crossing temporarily, the employees on an approaching train owe him no duty of warning or care. He is not a trespasser upon

the· highway, nor does he forfeit all right to be warned of the approach of a train. The protection of life and property on the highway where it is crossed by a railroad track is within the purpose of the statute; and whether a person on the crossing is in actual motion ·or is temporarily standing does not make two such distinct situations that the statute applies wholly for the protection of persons in the one and not at all for those in the other. If a person is loitering or standing on a railroad crossing, he may be guilty of negligence, as matter of fact, which may often prevent a recovery, though not necessarily so in all cases; but it can not be said that the railroad company owes him no 'duty of warning.

If the plaintiff's son was placed in a position of peril by reason ·of the negligence of the defendant's agents, and if he sought to escape from it by running a short distance along the space between the tracks, with a view to crossing in front of the engine which was just starting, this did not make him a trespasser, or amenable to the law touching such persons. *Smith* v. *S., ·F. & W. Ry. Co.,* 84 *Ga.* 698; *Brunswick & Western R. Co.* v. *Gibson,* 97 *Ga.* 489. It can not be said that, from the allegations of the petition, the plaintiff's son was a trespasser. Moreover, counsel make no reference to the case of *Southern Ry. Co.* v. *Chatman,* 124 *Ga.* 1026, touching the question of injury to trespassers, but only cite previous cases, most if not all of which were there discussed.

Nor can we say, as matter of law, from the face of the petition, that the boy who was killed was guilty of such negligence as to bar a recovery by his father. Due care in a child of tender years is not to be measured by ordinary care in an adult,—that is by what every prudent man would do under the same circumstances. The measure of what is required by diligence on the part of a child of tender years is not identical with what diligence demands of a mature person. In such a child due care is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances and situation under investigation. We can not say, in the light of this rule, that this child was so negligent as to bar a recovery. Nor do we think that the petition as a whole was subject to general demurrer.

2. At the appearance term a special demurrer was filed, which contained two grounds: (1) That the petition does not plainly, fully, and distinctly set forth the plaintiff's cause of action. (2)

Because the allegation contained in the 7th paragraph of the petition, that the plaintiff's son was in the exercise of due, ordinary, and reasonable care, is a conclusion of the pleader. The first ground of this special demurrer is itself vague and general in character, and does not point out wherein the petition is deficient in plainness, fullness, or distinctness in setting forth the cause of action, and therefore presents no specific point for determination. The second ground was not insisted on. Two terms after the filing of the original demurrers, the defendant sought to amend its special demurrer by adding two grounds thereto as follows: (3) The petition does not allege, in the third paragraph thereof, what was the width of the space between the two tracks on which the moving trains were alleged to be passing. (4) Because the allegation in paragraph 3 of the petition, that plaintiff's son was caught in the narrow space between the two trains, is a mere conclusion of the pleader. This amendment was overruled, and exception was taken to this judgment.

In *Farkas* v. *Monk,* 119 *Ga.* 515, it was held that "It is too late, at the trial term of a case, for the plaintiff to file an amendment to a demurrer to the defendant's plea, setting up new and distinct grounds of objection thereto." This ruling in principle controls the question of the allowance of the amendment adding new grounds to the special demurrer involved in the present case. Realizing this fact, counsel for the plaintiff in error have asked us to overrule that decision. Upon consideration, we think it is sound, and in accordance with the practice provided by the present law concerning pleadings and with the spirit of previous decisions of this court; and we therefore decline to overrule it. While the right to amend pleadings has long been declared by law (Civil Code, §5097), and a rule of court has provided that matters appearing on the face of the declaration or process should be taken advantage of at the first term and immediately determined (Civil Code, §5059, Rule 28), and it has been declared by statute that all demurrers and pleas should be filed and determined at the first term, unless continued by the court or by consent of parties (Civil Code, §5047), this was reenforced by an act of the legislature in 1893 (Civil Code, §5045), which declared, that "The judge at each regular term of the court shall call all cases on the appearance docket, and hear and decide all objections made to the sufficiency

of petitions and pleas, and may by order dismiss plaintiff's petition, or strike defendant's plea, for non-compliance with the requirements of law, unless the defect is cured by amendment; the court may on good cause shown allow a reasonable time in his discretion for making and filing such amendment." It was evidently the spirit of the act of 1893 to require objections to the sufficiency of pleadings to be made at the first term, and there was the more reason for this in regard to a special demurrer, which did not attack the entire declaration as setting forth no cause of action, but set up that some particular allegation or portion of the petition or plea was lacking in sufficient fullness, and, if sustained, might generally be met by amendment. Under the old practice, much time was often lost after a jury was empaneled, by hearing an objection to the sufficiency of some particular allegation, followed by arguments pro and con upon the objection, a ruling holding that a more specific allegation should be made, a proposition to amend for that purpose, objections to the amendment, a ruling thereon, and a renewal of a special demurrer to the allegation as amended. The jury has nothing to do with the question of shaping the pleadings, and all of this was not only of no benefit in the jury trial, but was actually undesirable, as arguments were made before them with which they legally had no concern, but the impression made by which it was difficult, if not impossible, to eradicate from their minds. The present law of pleading contemplates a hearing and dealing with objections to pleadings promptly by the judge. It is certainly best that this should be done and the issues made up before the case goes to the jury at all. If the general right of amending pleadings at any stage of the case were held to apply to special demurrers, in spite of the act of 1893, why could not a special demurrer, or new grounds thereof, be added at the time of the jury trial, if the demurrer previously filed had not been pressed to decision? The law does not contemplate any such right. It intends that objections to defects in pleadings shall be made at the first term. *Ward* v. *Frick Co.,* 95 *Ga.* 804. In *City Council of Augusta* v. *Lombard,* 101 *Ga.* 724, it was held, that where a defendant at the first term filed a general demurrer to a declaration, he could not at the second term amend such general demurrer by adding thereto grounds of special demurrer; and that the filing of the special demurrer after the time allowed by law furnished a

good reason why the court should overrule and disallow it. *Richmond & Danville R. Co.* v. *Mitchell*, 95 *Ga.* 78; *Ford* v. *Fargason*, 120 *Ga.* 708. In the case of the *City Council of Augusta*, supra, the effort was to amend by adding to the general demurrer grounds of special demurrer; but the reason for the ruling would also apply to filing a mere skeleton or general statement that the petition was insufficient, and adding to it at a later term new grounds of special demurrer, by way of amendment. Whether a mere inadvertent or accidental omission from a ground of special demurrer, or an inaccuracy, or imperfection therein, could be cured by amendment, presents a different question from the claim of right to add new and independent grounds after the time allowed by law for filing a special demurrer has elapsed. Also the practice of moving to dismiss a case because no cause of action is set forth is not here involved.

The decision of the presiding judge both on the general and special demurrer, so far at least as the grounds are insisted on here, and in regard to the proposed amendment, was not erroneous.

　　　　　*Judgment affirmed. All the Justices concur.*