### 3751, 3752.   FULLER *v.* INMAN, and *vice versa.*

1. In order for a mother to recover, under the provisions of § 4424 of the Civil Code of 1910, for the tortious homicide of her minor child, it must appear that at the time of the homicide she was dependent, either wholly or partially, upon the child, and that the child contributed substantially or materially to her support. In such a case the mother may recover, notwithstanding the father of the child is in life, in good health, living with the family, and exercising his parental rights up to the time of the child's death. It is the fact of contribution and dependency which creates the right of action in favor of the mother, and not the legal obligation to contribute to her support; and the contribution may be either in labor or in money.

2. It can not be held, as a matter of law, that a child six years of age, of average capacity and experience, is incapable of contributing substantially or materially to his mother's support, and to such an extent as that her support is either wholly or partially dependent upon such contribution.

3. Where a mother sues for the tortious homicide of her minor child, an allegation that the child was at the time of death between six and seven years of age is not subject to special demurrer. In such a case it is immaterial whether the child be six or seven. Nor, in such a case, where it is alleged that the child was run over by an automobile and killed, is an allegation that the child was at a point "close" to a named crossing subject to special demurrer.

4. Where a petition states the facts upon which the claim of negligence is based, a general allegation in the petition, following a statement of the facts relied upon to show negligence, will be construed to have reference to the particular facts pleaded; and, so construed, it is not subject to special demurrer.

5. In a case of the character mentioned in the preceding headnotes, an allegation that the deceased would have been a useful man to the petitioner and to the community should be stricken, on special demurrer.

6. An allegation in the petition in such a case that the deceased child contributed to the support of the plaintiff, and that she was dependent upon him, is not subject to special demurrer, when the facts upon which this conclusion is based are set forth in the petition. The general averment will be construed to have reference to the special facts pleaded.

7. There was no error in the judgment overruling the special demurrer, of which complaint was made in the cross-bill of exceptions.

DECIDED MARCH 6, 1912.

Action for damages; from city court of Atlanta—Judge Reid. September 16, 1911.

The suit was for the alleged wrongful homicide of the plaintiff's son by the defendant. The petition was as follows:

"Georgia, Fulton County. To the City Court of Atlanta:

"The petition of Mrs. M. C. Fuller shows the following facts: 1. The defendant is Miss Jennie Inman. 2. Defendant is a resident of said State and county. 3. Defendant has damaged petitioner in the sum of twenty-five thousand dollars, by reason of the following facts. 4. On or about the 26th of March, 1911, petitioner's son, James Dewey Fuller, was killed by the motor vehicle of defendant. 5. At said time petitioner's son was on the Howell's Mill road, a public road in said county. 6. He was at a point close to a crossing known as 'Woodward's Post-office,' or 'Brooked,' same being about a mile beyond the water-works reservoir. 7. There was on the roadside at the time a wagon headed north. 8. The wagon was standing still, and the driver thereof was sitting in the same. 9. The deceased was standing behind the wagon; a young man of the neighborhood was standing on the side of the wagon toward the middle of the road. 10. This was at a point about eighty yards south of the crossing above referred to, and just a few feet north of a point where another street or road ran into the Howell's Mill road. 11. At the crossing referred to as 'Woodward's Post-office,' or 'Brooked,' were several stores and a blacksmith shop, and it was a populous country cross-road. 12. On the street which ran into the Howell's Mill road, right at the place of the killing, were a number of houses, and the place was a populous country cross-roads settlement. Just north of 'Woodward's Post-office,' or 'Brooked,' referred to, the road curved sharply to the east. 13. The deceased could not see the motor vehicle coming, because of the wagon. 14. The wagon was a top wagon and a milk wagon. 15. The motor vehicle of the defendant came around the curve without any warning by bell, horn, or other signal of any sort. The motor vehicle crossed

the crossing known as ' Woodward's Post-office,' or 'Brooked,' without any warning by bell, horn, or other signal of any sort. 16. The motor vehicle passed the group of stores without any warning by bell, horn, or other signal of any sort. 17. The motor vehicle approached the wagon and the other street and struck the deceased without any warning by bell, horn, or other signal of any sort. 18. It came at a great rate of speed. 19. Petitioner charges, the rate of speed was not reasonable, having regard to the traffic use of the highway, and that the same endangered life and limb of those upon the highway. 20. Said machine approached both of the crossings herein referred to at a greater rate of speed than six miles an hour, and the defendant approached the deceased and the wagon and the two men by it without giving any warning of any sort by the use of bell, horn, or other signal of any sort. 21. Petitioner further shows the entire action of the defendant herein was negligent. 22. The motor vehicle was being operated and run by an employee of the defendant. 23. The defendant herself was at the time in the vehicle. 24. The defendant was chargeable with the action and conduct of the chauffeur. The negligence of the chauffeur was the negligence of the defendant. 25. The deceased was free from all fault or negligence, and could not have avoided the result of defendant's negligence by the use of ordinary care. 26. Petitioner was free from all fault or negligence, and could not have avoided the result of defendant's negligence by the use of ordinary care. 27. The deceased was between six and seven years of age, and was a strong, well-grown boy for his age. 28. Deceased lived with petitioner and her husband and seven of her children. The deceased was the youngest child, and all the older children were either at work or going to school. 29. The deceased ran on errands, helped split kindling, bring in wood, helped with the cows, and generally waited on petitioner, and helped in the household work, doing all of those innumerable little things to be done in the house which a child can do as effectively, or more than a grown person. The deceased contributed to petitioner's support, and she was dependent on him. 30. As the deceased grew up, approached and reached manhood, his earning capacity would have been increased, and he would have been a valuable and useful man to petitioner and the community. 31. Petitioner sues for the full financial value of the life of the deceased. Wherefore," etc.

The defendant demurred generally and specially. The court struck paragraphs 1, 5, 8, and 19 of the petition, sustained the general demurrer; and overruled all other grounds of special demurrer. The plaintiff excepted to the judgment striking these paragraphs of the petition and dismissing it, and the defendant excepted to the refusal to sustain the other grounds of special demurrer. The judgment sustaining the general demurrer was placed upon the ground that the plaintiff's deceased child could not be said to have contributed materially and substantially to the plaintiff's support, within the meaning of the law authorizing a mother to recover for the homicide of a child. Counsel for the defendant seek to sustain the judgment upon this ground, and also upon the contention that a mother has no right of action for the homicide of her minor child while her husband, its father, is alive and in good health and exercising parental rights over the child up to the time of the child's death.

*Burton Smith,* for plaintiff.

*Smith, Hammond & Smith,* for defendant.

POTTLE, J. 1. It was a settled doctrine of the common law that no one could maintain a civil action for damages on account of the death of a human being. To remedy this hardship, Lord Campbell, in 1846, introduced in the British Parliament an act to authorize the recovery of damages in cases of the wrongful homicide of a person. This act, which is known in history as Lord Campbell's act, is the basis for statutes which have been adopted in practically all the States of the American Union. The first act passed on the subject in Georgia was the act approved February 23, 1850, which provided, in substance, that in all cases where death should result under circumstances where, if death had not ensued, the person injured would have had a right of action, the legal representative of the deceased should have an action at law against the person committing the act from which death resulted, one half of the recovery to be paid to the wife and children, or the husband, of the deceased, if any, in the event the estate was insolvent. Cobb's Dig. 476. In 1856 an act was passed, applicable only to railroad companies, which provided that if a person should be killed by the negligence of a railroad company, or of any of its officers or agents, by the running of its cars or engines, a right of action to recover damages for the homicide would vest in the widow, if any, and, if

no widow, in the legal representative. Acts 1855-6, p. 155. These statutes were codified in § 2913 of the Code of 1860, which is in the following language: "A widow, or, if no widow, a child or children, may recover for the homicide of the husband or parent; and if suit be brought by the widow or children, and the former, or one of the latter, dies pending the action, the same shall survive in the first case to the children, and in the latter case to the surviving child or children." This law was incorporated, in the same language, in § 2971 of the Code of 1873. In 1878 the law was amended so as to provide that there might be a recovery, in any case comprehended by the statute, for the full value of the life of the deceased, as shown by the evidence, and that when the recovery was by the widow, she should hold the amount recovered subject to the law of descents, just as if it had been personal property descending to the widow and children from the decedent. There was a further amendment, to the effect that no recovery under the act should be subject to any debt or liability of the deceased husband or parent. Acts 1878-9, p. 59. The law, with the amendment of 1878, appeared in § 2971 of the Code of 1882.

It was not until 1887 that the law permitted a parent to recover for the negligent homicide of a child, or the husband to recover for the homicide of his wife. In that year the section of the Code of 1882 above referred to was amended so as to provide: "The husband may recover for the homicide of his wife; and if she leaves child or children surviving, said husband and children shall sue jointly, and not separately, with the right to recover the full value of the life of the deceased, as shown by the evidence, and with the right of survivorship as to said suit if either die pending the action. A mother, or, if no mother, a father, may recover for the homicide of a child, minor or sui juris, upon whom she or he is dependent, or who contributes to his or her support, unless said child leave a wife, husband, or child. Said mother or father shall be entitled to recover the full value of the life of said child. The word 'homicide,' used in this section, shall be held to include all cases where the death of a human being results from a crime or from criminal or other negligence." Acts 1887, p. 45. The law as amended by the act of 1887 now appears in § 4424 of the Civil Code (1910). Under this law the parent can recover for the homicide of a child only when the parent is dependent upon the child and the child contrib-

utes to the parent's support. The language of the statute is that recovery may be had either when the parent is dependent or when the child contributes to the parent's support, but it is settled, by the decisions of the Supreme Court, that in order to authorize a recovery, there must have been both dependency and contribution to the parent's support. *Clay* v. *Central R. Co.,* 84 *Ga.* 345 (10 S. E. 967) ; *Augusta R. Co.* v. *McDade,* 105 *Ga.* 134 (7), (31 S. E. 420) ; *Smith* v. *Hatcher,* 102 *Ga.* 158 (29 S. E. 162).

The question presented under the contention of counsel for the defendant is whether or not, when the father is in life, living with the family as its head, contributing to its support and performing all of those duties usually incumbent on the head of the family, the mother can ever be said to be, legally speaking, dependent upon her minor child for support, and the child can ever be said in such a case to contribute to the mother's support, within the purview of this statute. In other words, the argument is that the father is entitled to the earnings of his minor child, and that whenever such earnings are used to aid in the support of the family, the contribution comes, not from the child, but from the father. The statute with which we are now dealing, being in derogation of the common law, must be strictly construed. *Marshall* v. *Macon,* 103 *Ga.* 725 (30 S. E. 571, 41 L. R. A. 211; 68 Am. St. Rep. 140) ; *Robinson* v. *Georgia R. Co.,* 117 *Ga.* 168 (43 S. E. 452, 60 L. R. A. 555, 97 Am. St. R. 156). The act is partly punitory and partly compensatory. As was said by Mr. Justice Lumpkin, in *Georgia R. Co.* v. *Spinks,* 111 *Ga.* 571 (36 S. E. 855) : "So much, therefore, of the statute as confers upon parents the right to sue for the wrongful killing of a child is in large measure punitory, and hence the reason for holding that at least this portion of the homicide act should be subjected to strict construction. It is not, however, a purely penal act; for if the General Assembly had intended that for every death resulting from crime or negligence a right of action should arise, it would have taken care to so provide, and in no case would a plaintiff be wanting. The act, therefore is, to a considerable extent, compensatory in its character." This results from the fact that the measure of damages under the statute is the full value of the life of the child, which may be, and in most cases is, largely in excess of the amount which would probably be contributed to the support of the parent; but at the same time it is an arbitrary meas-

ure of damages, fixed by the General Assembly as compensation for the loss of this contribution to the parent's support.

The question, therefore, arises: To what extent must the parent be dependent upon the child for support, and to what extent must the child contribute to the parent's support, before the parent will have a right of action for its homicide? In one of the earliest cases in which the act of 1887 was under consideration, the Supreme Court held that the words in the statute, "who contributes to his or her support," mean that the contribution to the father or mother by the child need not be wholly sufficient, but need only be such as is in part sufficient for such support, and that the word "dependent" means wholly or in part dependent materially upon such child for support. *Daniels* v. *Savannah Ry. Co.,* 86 *Ga.* 236 (12 S. E. 365). As an illustration, the court in that case said that a mother might have several children who contributed to her support, she not being dependent on one child more than on another, but that if she were dependent upon any one of them, "wholly or partially, and he contributed to her support," she would be entitled to recover for his negligent homicide. *Augusta Ry. Co.* v. *Glover,* 92 *Ga.* 132 (18 S. E. 406). See, also, *Atlanta &c. Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145). In *Central Ry. Co.* v. *Henson,* 121 *Ga.* 462 (49 S. E. 278), the court said: "It is well settled . . that it is not necessary, under this section, that the plaintiff show that he or she depended alone upon the deceased for his or her entire support; but that partial dependence upon the child's labor, accompanied by substantial contribution therefrom to the maintenance of the plaintiff, is sufficient." See also *Savannah Elec. Co* v. *Bell,* 124 *Ga.* 663 (53 S. E. 109) ; *Atlantic Coast Line R. Co.* v. *McDonald,* 135 *Ga.* 635 (7), (70 S. E. 249). Considering the previous decisions of the Supreme Court, this court in *Western Union Telegraph Co.* v. *Harris,* 6 *Ga. App.* 260 (64 S. E. 1123), said: "It is sufficient if the contribution made by the child in aid of the parent's necessities be a substantial contribution."

Having said in one case that the contribution must be *material,* and in another case that it must be *substantial,* it is necessary to determine what contribution or what support by the child would be material or substantial, within the meaning of the law. No fixed definite rule can be laid down which would be applicable in all cases, but each case must depend upon its own peculiar facts.

The dependence and contribution to support must not be fanciful. It must not be imaginary; it must be real; it must be actual; it must be to such an extent as substantially or materially to aid the parent. In applying this rule to the facts in particular cases, it will be helpful to examine previous decisions of the Supreme Court, in order to ascertain under what facts and circumstances parents have been permitted to recover for the negligent homicide of a minor child. For instance, in *Augusta Ry. Co.* v. *Glover,* supra, the court held that where a father and mother and minor children reside together and are mutually dependent upon the labor of the family for support, the minor whose labor, or the proceeds of it, comes into the common stock is to be considered as contributing substantially to the support of the mother. The suggestion made in the argument in the present case, that unless the child contributes more than he consumes, he can not be said to be, in a legal sense, contributing to his parent's support, is answered by Mr. Chief Justice Bleckley in *Augusta Ry. Co.* v. *Glover,* supra, as follows: "Members of the same household who live by their common labor and its proceeds have a mutual dependence one upon another. Certainly so unless it be affirmatively shown that a particular member consumes as much, or more, of the common stock than he contributes to it. Even that would not be a conclusive test, for the services of a child to a mother or of a mother to a child may well be reckoned as contributing substantially to the support of the recipient far beyond any money value which the services may have, and the chief element of dependence may be in respect to personal services of this nature." The learned Chief Justice further suggested that "in the case of laboring people some regard must be had to the probability of future dependence of an older member of the family upon younger ones;" that in the natural order of human events old age would overtake the parent; that the child was one of the props and stays which nature had provided; and that when this prop was removed, the law demanded at the hands of the wrong-doer, for the benefit of the parent, the full value of his life. In *Atlanta &c. Ry. Co.* v. *Gravitt,* supra, it was held that a boy who worked with his father on the farm, and rendered services to his mother about the house in the performance of her household duties, contributed substantially to the support of his mother, and she was, in a legal sense, dependent upon him. In *Central Ry. Co.* v.

*Henson,* supra, it appeared that the child actually earned some money which contributed to a material extent to the support of the parent. Of course, if the parent actually has an income of his own sufficient to maintain him, from whatever source derived, he can not be said to be dependent either wholly or in part upon the labors of his child. *Savannah Elec. Co.* v. *Bell,* supra; *Atlantic Coast Line R. Co.* v. *McDonald,* supra. It is utterly immaterial that the child does not earn sufficient money to support himself. If the mother gets the benefit of what he does earn, or of his labor, and she is dependent upon such labor or earnings for support, she has a right to recover for his negligent homicide. This was directly held in the case last cited. The statute contemplates present support. It does not deal with the past or the future. The child must have been actually contributing to the support of the parent at the time of its homicide, and the parent must have been dependent, either wholly or in part, upon the child at that time, in order to authorize a recovery. *Smith* v. *Hatcher,* supra. In *Georgia R. Co.* v. *Spinks.* 111 *Ga.* 571 (36 S. E. 855), the rule is stated thus: "Where a family of working people, including parents and a minor child, were mutually dependent upon the labor of one another for a living, and the child rendered valuable services of which the mother got the benefit, she was dependent upon him if he thus contributed to her support." The statute contemplates individual dependence, and hence it was held, in the case last cited, that a father could not recover for the homicide of his minor son where the earnings of the parent were sufficient to support himself, although he was compelled to expend a large portion of these earnings in the support of other members of his family, and the deceased child contributed to the support of the family. The difference between mother and father is that in most cases the father is self-sustaining, whereas the mother attends to the household duties and performs those acts usually incumbent on a mother, and does not contribute any money toward the family's support. The statute recognizes the superior claims of the mother, because the father can sue only in the event there is no mother. The statute, therefore, is a recognition of the fact that the mother is the parent who is usually dependent upon other members of the family for support.

Generally speaking, it is true that a minor child who has not been emancipated by his father has no legal title to his earnings; that the

fruits of his labor belong to his father, and that in a strict techni-
cal sense, when such a child expends his earnings, with the con-
sent of his father, for the benefit of some one else, this is a contri-
bution from the father. But clearly the statute under considera-
tion in the present case is not dealing with contribution in this
legal sense. The child need not contribute any money to the sup-
port of the mother, in order to authorize a recovery by her. If he
performs substantial services, of which she receives the benefit in
and about the household, this is contribution to her support, and she
is dependent upon that child, within the meaning of the law, with-
out reference to whether he contributes one penny to her support.
The statute deals with fact, not theory. It is the fact of contribu-
tion and the fact of dependency which create the right of action.
It is utterly immaterial that the father may be legally entitled to
the minor child's earnings and may be legally entitled to the fruits
of his labor; if a dependent mother actually gets the benefit of the
child's earnings, or of the child's labor, either with or without his
father's consent, she is dependent upon that child in a legal sense,
and the child materially contributes to her support, within the
meaning of the statute. As was so well expressed by Mr. Justice
Cobb in *Savannah Electric Co.* v. *Bell,* supra, "It is not
necessary, under the statute, that the child contributing to the sup-
port of the parent should be under any legal obligation to make
the contribution. It is the fact of contribution, and not the legal
obligation to make it, that the statute makes the ingredient of
the cause of action. Daly *v.* New Jersey Co., 155 Mass. 5."

The logical result of the argument of counsel for the defendant
in error is that in no case where the father is in life, living with
the family and performing the duties of the head of the household,
can the mother be said, under any circumstances, to be dependent
upon the services of her minor child, nor can he be said to contrib-
ute to her support. To give the statute this construction would
defeat its primary object and withdraw this protection from the
very parent whose welfare the General Assembly was most solici-
tous to conserve. We are very clear, both upon precedent and prin-
ciple, that no such construction of the statute is admissible, and we
hold that when, in a case of this character, the mother brings suit,
she is entitled to maintain her action, if she can show that the child
was at the time of his death materially or substantially contributing

44

to her support, and she was wholly or partially dependent upon such contribution, without reference to the fact that the father may be alive, in good health, and exercising his parental rights over the child up to the time of its death. The right of the parent to recover for the homicide of a child upon whom he or she is dependent is wholly independent of the claim of the father for the loss of the child's services. Both causes of action may exist at the same time. *Augusta Ry. Co.* v. *Glover*, supra.

The question whether, in a given case, the child contributes substantially or materially to his parent's support, and the parent is dependent on that child, within the meaning of the statute under consideration, is a question of fact to be determined by the jury. In view of the fact that pecuniary contribution is not essential, it can not be said, as a matter of law, that the facts alleged in the plaintiff's petition in the present case were not sufficient to entitle her to go to the jury upon this question.

2. The next question is whether or not the judgment dismissing the petition can be sustained upon the theory that, as a matter of law, a child between six and seven years of age can not be said to contribute to the parent's support, and the parent can not be said to be dependent wholly or partially upon such child, within the meaning of the statute upon which the suit is based. As petitions are construed most strongly against the pleader, the allegation that the deceased was between six and seven years of age will be held to mean that the deceased was slightly more than six years of age. There are exceptional cases in which courts might hold, as a matter of law, that a child has no earning capacity and can not contribute substantially to the support of anybody. Courts can not shut their eyes to matters of common knowledge, such as the fact that an infant in arms can not materially contribute to another's support. On the other hand, courts judicially know that children of certain ages, in good health, of average capacity, are capable of contributing to the support of their parents. Between these two extremes the line must be drawn somewhere, and there is a point where the courts will not undertake to determine the question as a matter of law, but will leave it to be solved by the jury as an issue of fact. Many cases have been considered by the Supreme Court where suits have been brought under this statute for the negligent homicide of a minor child, and where actions have been

brought by a father under the common law, to recover for loss of earnings of his minor child. In *Sugarman* v. *Atlanta Ry. Co.,* 94 *Ga.* 604 (21 S. E. 581), a father sought to recover for loss of services of a girl not quite five years old at the time she was killed. The court sustained a general demurrer to the petition, and the Supreme Court reversed this judgment, holding that a cause of action was set forth in the petition. While it does not appear that the point as to the age of the child was expressly made, the judgment holding that a cause of action was set forth could mean nothing less than that in the opinion of the Supreme Court it was a question for the jury to say whether or not the plaintiff's child was old enough to render valuable services. In *Atlanta &c. Ry. Co.* v. *Gravitt,* supra, the suit was by the father, and the boy killed was eleven years old. In *Southern Ry. Co.* v. *Covenia,* 100 *Ga.* 46 (29 S. E. 219, 40 L. R. A. 253, 62 Am. St. R. 312), it was held that the court would take judicial cognizance of the fact that an infant only one year and eight months and ten days old was incapable of rendering valuable services. In *Atlanta Ry. Co.* v. *Arnold,* 100 *Ga.* 566 (28 S. E. 224), the court, by four Justices (one dissenting and one being disqualified), applied the rule laid down in the *Covenia* case to a child between two and a half and three years old. In *Crawford* v. *Southern Ry. Co.,* 106 *Ga.* 870 (33 S. E. 826), a father brought suit to recover for the homicide of a minor daughter four and one half years of age. The court held that it was a question for the jury to determine, whether the child was capable of rendering services of a pecuniary value. The following language of Mr. Justice Fish states the rule of the Supreme Court upon the question now under consideration: "It is easy enough for a court to decide, as a matter of law, that any child of a given age is incapable of rendering valuable services, notwithstanding the allegations of a petition may be to the contrary, where the age in question is such that, according to all human observation and experience, it would be utterly preposterous to believe that a child who had not passed beyond that age could render such services. For instance, no sensible man believes that any child a year old can perform service of value to its parents. But by gradually increasing the age we must, sooner or later, arrive at an age which is debatable ground, where reasonable minds will differ in opinion upon the question whether any child of that particular age can render service of pecu-

niary worth. Just when that debatable ground will be reached, it is, in the very nature of things, impossible to determine. When the line is reached where it seems possible that reasonable minds may begin to differ upon this question, the only course for a court to pursue is to leave the determination of the question to a jury." In *Central Ry. Co.* v. *Motz,* 130 *Ga.* 414 (61 S. E. 1), the child was nine years of age. In *Atlantic Coast Line R. Co.* v. *McDonald,* 135 *Ga.* 635 (70 S. E. 249), it was held that a mother might recover for the tortious homicide of her nine-year-old son. In *Stamps* v. *Newton County,* 8 *Ga. App.* 229 (68 S. E. 947), the action was by a mother and the child was five years old. A verdict in favor of the defendant was sustained, and no point was made as to the age of the child; but in that case counsel for both sides, and this court, seemed to have accepted the theory that it would have been a question for the jury to say whether or not a child of such an age was capable of contributing substantially to the mother's support. Upon the authority of these decisions, it can not be said, as a matter of law, that the plaintiff's son was incapable of rendering services which would materially or substantially contribute to his mother's support.

It is said, however, that because it has been held that a father may recover upon his common-law right for loss of services of a child of tender years, it does not follow that a parent may recover, under the statute now under consideration, for the tortious homicide of a child of the same age. In other words, it is argued that there is a distinction between earning capacity and the ability to contribute substantially or materially to the parent's support. We do not think there is any rational distinction between the two cases. In the suit by the father upon his common-law right of action, the test is the earning capacity of the child. In such a case it is immaterial whether the child is actually earning anything or not. For instance, the father may recover for the loss of services of a child wrongfully killed while he is attending school and wholly a charge upon the parent. In a case like the present, however, it must appear that the child is actually contributing to the parent's support, and that the parent is actually dependent, either wholly or partially, upon the child's labor. It would make no difference how great the earning capacity of the child might be, if he was not actually contributing to his parent's support, the action would fail. A boy of

eighteen, attending college and capable of earning a considerable amount of money, but not actually earning a penny, might be wrongfully killed, and in such a case neither the father nor the mother would have a right of action for his tortious homicide under this statute. But the father would have a right to recover for loss of services up to the time the child became twenty-one years of age, without reference to whether he was actually earning a single penny. This marks the distinction between the two cases, and the only distinction. A child who has earning capacity is capable of contributing materially to the support of his parent, within the meaning of the statute with which we are now dealing; and if such a child actually puts his earning capacity into operation, either in the form of labor for his parent, or by contributing to the parent the proceeds of labor which he performs for some one else, he is contributing substantially to the parent's support. Under the allegations of the petition in the present case, it was a question for the jury whether or not, at the time the plaintiff's son was killed, he was actually contributing to his mother's support and she was wholly or partially dependent upon him for support. The learned trial judge should not have decided this question upon demurrer, as a matter of law, adversely to the plaintiff, but it should be submitted to the jury as an issue of fact.

3. The special demurrer is rapidly outliving its usefulness. The law looks at substance rather than form. The legitimate function of a special demurrer is to compel the pleader to disclose whether he really has a cause of action or defense. The requirement that a plaintiff shall "plainly, fully, and distinctly" set forth his ground of complaint does not mean that he shall disclose the evidence upon which he relies, or indulge in needless particularity, but means only that his demand shall be set forth in terms sufficiently full and distinct to enable the court to determine whether a cause of action exists, and his adversary to understand the exact nature of the claim made against him. It is a useless consumption of time to try a case where the plaintiff really has no lawful complaint; and so he must disclose his charge with sufficient particularity to set this question at rest. For instance, if the suit is by a parent to recover for the homicide of a minor child, a general averment that the child was a minor would not be sufficient; because if the child was one or two years old, the court would hold that

the plaintiff had no cause of action. But an allegation that the child was between six and seven is sufficient, because it is immaterial, for purposes of pleading, whether the child was six or seven. And likewise as to an allegation that the child was at a point "close" to a certain crossing, since this was mere matter of description, it being immaterial to the cause of action whether the child was near or upon the crossing.

4. A general allegation of negligence is a mere conclusion. The conclusion may be wrong; and, therefore, the particular facts relied upon to support the conclusion should be pleaded. It is permissible, however, to set forth the facts, and then conclude that these facts amount to negligence. Demurrer will then raise the question whether the conclusion is good in law. As applied to the present case, the allegations were that the defendant failed to give warning of the rapid approach of the car. We construe the averment in paragraph 21 to mean that the defendant was negligent in this respect. So construing it, it was not subject to demurrer.

5. The averment in paragraph 30, that the deceased would have been a useful man to the petitioner and the community, was irrelevant. The question is: Was the deceased at the time of his death substantially contributing to his mother's support, and was she wholly or partially dependent upon him? He may have become a useful man both to his mother and the community, and still she might not have been dependent upon him.

6. The averments in paragraph 29 are proper subject-matter of proof. If the mother was dependent upon the child's labors for assistance such as that here described, the jury should be allowed to consider this fact along with the other evidence in the case. The averment that the deceased contributed to the petitioner's support, and that she was dependent on him, was intended to be supported by the other allegations in paragraph 29; and, so treated, it is sufficient.

7. We have carefully read the special grounds of demurrer, to the overruling of which exception is taken in the cross-bill, and none of them seem to us to be meritorious. It is not necessary to allege on which side of the road the wagon was standing. This was mere matter of inducement, and was averred simply to show why the deceased did not see the automobile approaching, the reason being that he was behind the wagon.

The allegations in paragraph 15 and 16, that the driver of the car failed to give any warning by bell, horn, or other signal, was sufficient. The act of 1910 in relation to the operation of automobiles requires that the person operating the machine "shall give reasonable warning of its approach by the use of a bell, horn, gong, or other signal, and use every reasonable precaution to insure the safety" of pedestrians and animals on the roadway. Acts 1910, p. 92. It was sufficient to allege that the defendant had violated this requirement of the act. The allegation was a statement of fact, and not a conclusion.

The act further provides that an automobile shall not be operated upon any of the highways "of this State . . at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life and limb of any person or the safety of any property, and upon approaching a bridge, dam, high embankment, sharp curve, descent, or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour." The petition alleged that the motor car came around a curve without warning. It is averred generally in paragraph 18 that it came at a great rate of speed, and in paragraph 19 the plaintiff charges that the rate of speed was not reasonable or proper, having regard to the traffic use of the highway, and that the same endangered life and limb of those on the highway, and that the machine approached the crossing referred to in the petition at a greater rate of speed than six miles an hour. Taking these allegations all together, they were not subject to demurrer. Properly construed, the plaintiff intended to aver that the machine was running slightly in excess of six miles an hour (because the allegation must be taken most strongly against her) ; and she concludes that this rate of speed was not reasonable or proper. Under the facts alleged, it was negligence to run the machine at a greater rate of speed than six miles per hour and without giving the warning which the law requires. The allegations were sufficiently specific as against demurrer.

The averment that the defendant was chargeable with the conduct of her chauffeur was surplusage and harmless. Under the facts alleged, the law would charge the defendant with the consequences of the negligent act of her agent—the driver. The same

observation applies to the allegation in paragraph 24 to the effect, that the negligence of the chauffeur was the negligence of the defendant.

The averment that the deceased and the petitioner were free from fault and could not have avoided the result of the defendant's negligence by the use of ordinary care is not a conclusion of the pleader, but an allegation of a substantive fact.

The allegation in paragraph 30, that the deceased's earning capacity would be increased as he grew older, is a statement of fact, and is sufficiently definite in pleading. It is subject, however, to the objection that the plaintiff failed to allege anywhere in the petition that the deceased had earning capacity. While there is no direct allegation to this effect in the petition, there are averments from which the conclusion is properly reached that the deceased did have earning capacity and did contribute to his mother's support. Our conclusion is that the court erred in sustaining the general demurrer, but committed no substantial error in his rulings upon the special demurrers. The result is that the judgment on the main bill of exceptions will be reversed, and on the cross-bill affirmed.

*Judgment on main bill reversed; on cross-bill affirmed.*